## LYNCH v. ROBERT P. MURPHY HOTEL CO. et al.

(Supreme Court, Special Term, New York County.   October 3, 1908.)

1. CARRIERS (§ 14*)—EXCLUSIVE PRIVILEGES—"TAXIMETER CAB."

A contract whereby a hotel company agrees to lease to another the privilege of carriage service and taximeter cab service for a specified term, and whereby the latter agrees to furnish carriages for the hotel and pay a specified sum per month, gives to the latter, as an exclusive privilege, the right to operate motor cabs at the hotel; the term "taximeter cab" including, as shown by the evidence, a motor cab.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 14.*]

2. LANDLORD AND TENANT (§ 75*)—LEASES—ASSIGNMENTS—SUBLETTING.

A contract whereby a hotel company agrees to lease to another for a specified term the privilege of carriage service, and whereby the latter agrees to furnish carriages for the hotel and pay a specified sum monthly, is a lease; and, in the absence of any prohibition against assignment or subletting, the latter may assign or sublet.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 222; Dec. Dig. § 75.*]

3. LANDLORD AND TENANT (§ 80*)—LEASES—ASSIGNMENTS—SUBLETTING.

Where the lessee of the privilege of carriage service for a hotel sublet the privilege, and alleged that the service furnished by the sublessee was adequate, the allegation of the lessor as to the inadequacy of the service, couched in most general terms, without setting forth any specific instances, was insufficient.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 80.*]

4. LANDLORD AND TENANT (§ 34*)—TERMINATION OF LEASE—BURDEN OF PROOF.

A lessor, relying on the cancellation of the lease by mutual consent, has the burden of showing a valid cancellation.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 34.*]

5. LANDLORD AND TENANT (§ 103*)—LEASES—BREACHES.

A hotel company leased the privilege of carriage service for the hotel to a lessee, who, with the consent of the company, contracted with a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

third person to furnish such service; and said third person entered on the performance of the agreement. The company subsequently, in a communication to the municipal authorities, withdrew its consent to the continuance of the use of the streets at the hotel as hack stands for the lessee and the third person, and the municipal license to them to operate cabs was revoked. *Held* that, while the consent of the hotel company might be essential to the granting or continuance of such license, the withdrawal by the company of its consent could not defeat the right of the lessee and the third person under the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 103.*]

6. INJUNCTION (§ 136*)—PRELIMINARY INJUNCTION—GROUNDS.
Where a lessee of the privilege of carriage service for a hotel clearly shows his rights in the premises and an invasion thereof by the lessor, an injunction pendente lite will be granted in an action by the lessee against the lessor.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 306; Dec. Dig. § 136.*]

Action by Bernard Lynch against the Robert P. Murphy Hotel Company and others. On motion for injunction. Motion granted.

James Kearney, for plaintiff.
William F. Goldbeck, for defendant New York Taxicab Company.
Lewis D. Mooney, for defendant Robert P. Murphy Hotel Company.

GIEGERICH, J. The defendant Robert P. Murphy Hotel Company, on the one hand, and Bernard Lynch, the plaintiff, and the defendant Robert A. Pimot, his copartner, on the other, entered into a written agreement, dated March 10, 1908, whereby the said hotel company—

"agrees to lease the privilege of carriage service and taximeter cab service for the sum of fifteen hundred dollars ($1,500) per year, or one hundred and twenty-five dollars ($125) per month, to the parties of the second part (said copartners), for a term of not less than two years, and the party of the first part (said hotel company) is to have the privilege for stand for touring cars for race track, &c. The parties of the second part (said copartners) hereby agree to furnish the carriages, cabs, and horses for the Hotel Albany, northeast corner of Forty-First street, New York City (Broadway), and pay therefor the sum of one hundred and twenty-five dollars ($125) per month."

The said Bernard Lynch alone brings this action; the complaint alleging that before the commencement thereof the plaintiff requested that said Robert A. Pimot join with him in the commencement and prosecution of the action, but that the latter refused to do so, and that therefore he has been made a party defendant.

It is urged in opposition to the motion for a temporary injunction that the agreement in suit does not give the exclusive right to operate motor cabs at the Hotel Albany, but I do not so construe the agreement. As I regard it, it does give such right. It is also claimed by the defendants, but disputed by the plaintiff, that it was not intended by the parties to give any privilege whatever to operate motor cabs. The language of the agreement, however, shows otherwise. That the term "taximeter cab" includes a motor cab is evidenced by the reply-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ing affidavit of Mr. William F. Goldbeck, one of the attorneys for the defendant New York Taxicab Company, verified October 23, 1908, wherein he states:

"The word 'taximeter' is the designation of the fare indicator and time and distance register which is affixed to a motor cab or horse-drawn vehicle for the purpose of automatically determining the charge for which the passenger becomes liable. Such taximeters are in common use in the city of New York and elsewhere."

From the additional affidavits submitted by the plaintiff it appears that a "taxicab" is uniformly understood to indicate a cab drawn or propelled by motor power, electricity, or other artificial means.

The defendants contend, furthermore, that, even if the agreement in suit does confer the privilege of motor cab service, the plaintiff and his copartner have no power to sublet or assign the same. Such contention is based upon the theory that a mere license, revocable at the pleasure of the defendant hotel company, was conferred; but it will be seen from the language of the agreement that a lease was created by its terms, which does not contain any prohibition against an assignment or subletting.

It is claimed by the defendants, but denied by the plaintiff, that the motor cab service furnished by the Union Taxicab Auto Service Company, to whom the partners sublet their privilege, was inadequate. The allegations as to such inadequate service are couched in the most general terms and no specific instances are set forth. Under these circumstances, such averments must be deemed insufficient.

The defendant Pimot signed a paper writing, dated August 31, 1908, and acknowledged September 2, 1908, "as partner of Bernard Lynch," which recites that he and said plaintiff, as partners, in consideration of $450, released the said hotel company from all claims, and it further recites:

"And we particularly release and declare null and void the agreement we entered into with the Robert P. Murphy Hotel Company on the —— March, 1908. This release and cancellation of the agreement between the Robert P. Murphy Hotel Company is executed by me as the partner and agent of Bernard Lynch."

As to this instrument the defendant Pimot swears that during the summer of 1908 the copartnership became indebted to him to the extent of about $600; that the business of such copartnership "was becoming more and more disastrous," and that he told his copartner that he desired to surrender the agreement in suit and to abandon the service thereby provided for; that the plaintiff made no objection to such proposal; and that subsequently he (the defendant Pimot) executed the instrument referred to. The plaintiff denies that either he or the firm was indebted to the defendant Pimot, and further denies that the carriage and auto taxicab business at the Hotel Albany had been disastrous to the firm, and alleges that, "on the contrary, the same was a success from the start, and is now both successful and highly profitable." The plaintiff further denies that the defendant Pimot told him that he desired to obtain a surrender of the agreement in suit, and asserts that he did not authorize the latter to execute the release, and that the first knowledge he had of such release was when he read the

copy attached to the opposing affidavit of Robert P. Murphy. The plaintiff, by his affidavit of October 10, 1908, shows that after the commencement of this action, viz., on said October 10th he paid to the defendant hotel company the rent provided by the agreement in suit for the period from September 10 to November 10, 1908, viz., $250. The sum so paid was received by the defendant hotel company without any condition whatever, although the reasons why it was received are set forth in the affidavit of its president, verified October 23d. Such reasons, however, are not claimed to have been communicated or made known to the plaintiff. The acceptance of such rent is at variance with the position taken by the defendants that the agreement in suit has been released and canceled, and, as the burden of showing such release and cancellation is upon the defendants, they have clearly failed on that point.

The plaintiff claims that with the consent of the defendant hotel company he and his partner made an agreement with the said Union Taxicab Auto Service Company whereby for a stipulated compensation it agreed to furnish taximeter cabs for said hotel for a period of one year from the date of the instrument, viz., May 23, 1908; that said service company entered upon the performance of such agreement and continued to supply said hotel with taximeter cabs until August 17, 1908, when it is alleged the privilege of carriage and taximeter service, against the plaintiff's protest, was given by the defendant hotel company to the New York Taxicab Company, whose employés, it is further alleged, have since prevented the plaintiff from exercising the privilege conferred by the assignment in suit. The defendant New York Taxicab Company insists that there is no evidence that it has committed any act of unlawful interference with the plaintiff; but its answer admits that it has installed in the Hotel Albany a telephone and telephone booth, and is conducting a taxicab service at said hotel with the permission of the defendant hotel company. If the plaintiff has the exclusive right to the taxicab service at said hotel, then these acts are an invasion of such right.

The defendants contend, however, that the defendant hotel company, in a written communication to the bureau of licenses, has withdrawn its consent to the continuance of the use of the streets at said hotel as special hack stands for the plaintiff and the Union Taxicab Auto Service Company, and that the license to them was thereby revoked, and consequently the plaintiff and the said Union Taxicab Auto Service Company have no longer any right to operate motor cabs at said hotel. While the consent of the defendant hotel company may be essential to the granting or continuance of a license from the municipal authorities to operate such cabs, the withdrawal of its consent cannot defeat the plaintiff's right and those of his and his copartner, sublessee under the lease in suit. Such rights have been clearly made to appear by the papers presented upon this motion, and, since an invasion of the same has been shown, an injunction pendente lite should be granted. The amount of the security required as a condition to the granting of the injunction will be fixed upon the settlement of the order, which may be had upon the usual notice.

Motion granted, with $10 costs.