# Lloyd *v.* Haugh, Appellant.

*Common carriers—Warehouse and storage company—Moving household goods.*

1. Anyone who holds himself out to the public as ready to undertake for hire or reward the transportation of goods from place to place, and so invites the custom of the public, is in the estimation of the law a common carrier.

2. Where an incorporated company chartered to do a general warehouse and storage business holds itself out to the public by various methods of advertising as engaged in the general moving and hauling of household goods, it is a common carrier within the meaning of the law, and this is the case although it claims the right to select those whom it will serve, and its custom is to discriminate, accepting some and rejecting others, as it may choose.

3. Where such a company is sued for the loss of goods the burden is on it, in seeking to escape liability, to show that the loss is to be referred to some one of the exceptions to the common-law rule.

4. Where a common carrier makes a contract with a husband for transportation of his own household effects without mention being made of his wife's goods, and the carrier accepts the wife's goods without distinguishing them from those of the husband, it is liable for the loss of the wife's goods as well as those of the husband.

5. The right of action against a common carrier for goods lost or damaged while in the carrier's custody follows ownership of the goods, and

anyone having a beneficial interest in them may maintain the action. If the action is in tort it should be brought by the owner of the goods, whether he be consignor, consignee or a third person. Anyone having a beneficial interest in the goods may maintain an action for damages thereto.

6. It is a matter of no consequence at whose hands a common carrier may have received goods for transportation, and it does not concern him to know who is the real owner of the goods.

7. In an action against a common carrier to recover for the loss of goods destroyed by fire, the carrier is liable where there is no evidence to indicate any particular cause for the fire; and it is immaterial that spontaneous combustion may have been a possible cause. Spontaneous combustion, where loss of goods results, would seem to imply negligence in a greater or less degree.

8. In an action against a common carrier to recover for the loss of household effects, clothing and other personal belongings, the just rule of damages is the actual value of the thing destroyed to him who owns it, taking into account its cost, the practicability and expense of replacing it, and such other considerations as in the particular case affect its value to the owner. Mere market value is not a true measure of compensation in such a case.

Argued Oct. 22, 1908. Appeals, Nos. 77 and 78, Oct. T., 1908, by defendant, from judgments of C. P. No. 3, Allegheny Co., Aug. T., 1905, Nos. 642 and 643, on verdicts for plaintiffs in cases of William F. Lloyd v. Haugh & Keenan Storage & Transfer Company and Maude P. Lloyd v. Haugh & Keenan Storage & Transfer Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for the loss of household effects. Before KENNEDY, P. J.

At the trial it appeared that the plaintiffs delivered to the defendant household goods and personal effects to be hauled from Pittsburg to Sewickley. At a point about halfway between these places one of the wagons containing the goods burst into flames and was destroyed with its contents in a few minutes.

At the trial the court charged in part as follows:

This case has taken a great deal of time in its trial, much

more than it should have, if we had known the whole situation and the facts in the start. [As you have heard from the rulings of the court, much that would ordinarily have been for your consideration has been stricken out by the ruling of the court, so that your duty is very much simplified; in other words, I can say to you, you have but one duty to perform and one thing to ascertain, namely, the value of the goods of the plaintiffs that were lost while in the custody or possession of this defendant.] [1] There are two separate cases here, and you will have to find two verdicts, one in favor of Mr. Lloyd and one in favor of Mrs. Lloyd. [The defendant is a corporation engaged in the general business of hauling or moving, among other things, household goods and effects; and some time in the month of May, 1905, about two years and eight months ago, this defendant undertook to move the household goods and effects of these two plaintiffs from their residence, on Moorewood avenue, in the eastern part of the city, to Shields station, on the Fort Wayne road, some distance below Allegheny City, perhaps sixteen or eighteen miles, and in accordance with that undertaking the defendant received into its possession on May 22 or 23, 1905, these goods, which it is claimed have been lost or destroyed, belonging to the plaintiffs.] [2] [As you have heard, the court has ruled that this defendant is a common carrier under the law, and is, therefore, liable for the loss of the goods of these plaintiffs; so that you have no business with the determination of the question as to whether the defendant was negligent in the carrying of the goods or not, but the sole question for your determination is the value of the goods that were lost while in the custody of the defendant.] [3] It seems that on May 23, these goods while in the course of transportation by the defendant to Shields station, there being six loads altogether, one of these wagon loads was destroyed by a fire at or near Dixmont station, on the same railroad, and the plaintiffs claim, and are entitled to, the value of those goods which were so lost or destroyed. These goods, the value of which you have to determine, are claimed by the plaintiffs to be of great value. Those of Mr. Lloyd are claimed to be worth between $2,100 and $2,200, while those belonging to Mrs. Lloyd are claimed by her

to be worth between $3,500 and $3,600, the two claims amounting to between $5,000 and $6,000. [These plaintiffs ask a verdict from you for the amount claimed by them, and they have offered a large amount of testimony showing the value of these goods.] [4] The defendant has offered a large amount of testimony tending to show the value. While the plaintiffs claim these amounts, the defendant maintains that the value is not anything like the value set up by the plaintiffs. The defendant claims that many of the articles going to make up these large amounts were not worth anything at all, or, if worth anything, that it would be very small in market value. [Now, the value that you are to ascertain for these goods that were lost while in the custody of the defendant, is what is called the market valuation of these goods; that is, as to a great portion of the goods here that were lost. As to the goods of a personal nature, such as wearing apparel and other goods or effects of a personal nature, and which have no market value—and there seems to be a great many of that kind here—as to those that have no market value, the rule which you will follow is their value to the plaintiffs, not any fanciful or imaginary value they may have put on the articles as may be worth to them only, but what is the value of those articles in money to them—not any valuation outside of their money value. That is the rule which you will follow in estimating the amounts to be awarded to these plaintiffs, severally. I cannot give you any other rules than what I have stated for you to follow in making up your verdicts to these plaintiffs. You will follow your own good judgment in getting at it from all this mass of testimony, and it will be your duty to consider it all. It is not necessary for me to go over the testimony in detail, but you must consider it all in trying to reach a fair market value for these goods that were lost or destroyed while in the custody of the defendant corporation. And as to the others, such as I have mentioned, of a personal nature, that have no market value, you will ascertain what is their value in money to these several plaintiffs.] [5]

Verdict and judgments for William F. Lloyd for $1,720 and for Maud P. Lloyd for $2,860. Defendant appealed.

*Errors assigned* among others were (1, 5) above instructions, quoting them.

*F. C. McGirr*, with him *John Marron*, for appellant.—Defendant was not a common carrier : Piedmont Mfg. Co. v. R. R. Co., 19 S. C. 353 ; Verner v. Sweitzer, 32 Pa. 208 ; Jaminet v. American Storage & Moving Co., 109 Mo. App. 257; Gordon v. Hutchinson, 1 W. & S. 285 ; Steinman v. Wilkins, 7 W. & S. 466 ; Willock v. R. R. Co., 166 Pa. 184.

Under the evidence, it was a question for the jury whether or not the defendant was a common carrier : Pennewill v. Cullen, 5 Harr. (Del.) 238 ; Avinger v. Ry. Co., 29 S. C. 265 ; Fuller v. Bradley, 25 Pa. 120 ; Verner v. Sweitzer, 32 Pa. 208 ; Harrington v. McShane, 2 Watts, 443 ; Taylor v. Wells, 3 Watts, 65.

The defendant was not liable for the loss of Mrs. Lloyd's goods under the evidence ; the question of spontaneous combustion should have been submitted to the jury : Lawson on Carriers, sec. 14, p. 15.

The proper measure of damages in this case was not given by the court : International R. R. Co. v. Nicholson, 61 Tex. 550 ; Gillingham v. Dempsey, 12 S. & R. 183 ; Warden v. Greer, 6 Watts, 424 ; Leech v. The Miner, 1 Phila. 144 ; Fox v. Hayward, 4 Brewster, 32.

*George B. Gordon*, with him *Wm. Watson Smith*, for appellees.—The defendant in this case was a public carrier. The evidence establishing this was entirely uncontradicted : Coggs v. Bernard, 2 Lord Raymond, 909 ; Gordon v. Hutchinson, 1 W. & S. 285 ; Harrington v. McShane, 2 Watts, 443 ; Verner v. Sweitzer, 32 Pa. 208 ; Beckman v. Shouse, 5 Rawle, 179 ; Jackson Architectural Iron Works v. Hurlbut, 158 N. Y. 34 (52 N. E. Repr. 665) ; Caye v. Pool, 108 Ky. 124 (55 S. W. Repr. 887) ; Farley v. Lavary, 21 Ky. L. Rep. 1252 (54 S. W. Repr. 840) ; Liverpool, etc., Steam Co. v. Phœnix Ins. Co., 129 U. S. 397 (9 Sup. Ct. Repr. 469).

The law is established by the cases that we have heretofore cited that whether or not a man has the responsibilities of a common carrier is a question of law : Ambler v. Phillips, 132 Pa. 167 ; Coxe v. Heisley, 19 Pa. 243.

It was not necessary that the defendant should make a contract with Mrs. Lloyd in order to be liable for the loss of her effects.    There was no evidence to submit to the jury that the goods were destroyed by spontaneous combustion.  The court's instructions to the jury as to damages were correct : Laubaugh v. R. R. Co., 28 Pa. Superior Ct. 247; Trout v. Kennedy, 47 Pa. 387; Green v. R. R. Co., 128 Mass. 221 ; Fairfax v. R. R. Co., 73 N. Y. 167; Parmelee v. Raymond, 43 Ill. App. 609.

Opinion by Mr. Justice Stewart, January 4, 1909 :

We shall not attempt to discuss separately each of the twenty-one assignments of error in these appeals.    The learned counsel agree that together they raise but five questions ; these we shall consider in the order they have been presented.

1. Was the defendant a common carrier ?    The learned trial judge held as matter of law that it was.    Briefly these were the facts, undisputed.    The defendant, an incorporated company, though chartered to do a general warehouse and storage business, does not confine itself strictly to the particular business for which it was chartered, but engages as well in the business of moving household goods in the city of Pittsburg and vicinity.    The president of the company, speaking to this point, says in his testimony that general hauling of household goods is one of the particular lines of business in which the company engages, and that it solicits business of this kind by public advertisements in various ways, by signs upon its wagons, upon fences, when that is allowed, by cards intended for general distribution, and by the bills and tags used in the course of business.    These advertisements speak for themselves, and unquestionably establish the fact, independent of everything else in the case, that the defendant does hold itself out to the public as engaged in the moving of household goods, thereby inviting employment along this line. None of these advertisements contain a suggestion of limited liability, or that the company will render such service only as it may select its patrons.    Notwithstanding this public committal of the company to a general and undiscriminating service, it is argued that inasmuch as the company claims the right to select those whom it will serve, and because its custom has been and is to discriminate, accepting some and rejecting

others, as it may choose, this circumstance makes it a private as distinguished from a common carrier, and exempts it from the obligations and liability which the law imposes on the latter relation. The argument assumes that no legal duty rests upon the defendant to treat alike all applying for its services, and avoid discrimination except upon justifying circumstances. Whether such a duty attaches as a necessary incident to the relation of common carrier, under any and all circumstances, need not be discussed. In Steinman v. Wilkins, 7 W. & S. 466, in speaking of the duty resting on a common carrier, Chief Justice GIBSON uses this language : " He is bound in England by the custom of the realm to carry for all employers at established prices ; but it is by no means certain that our ancestors brought the principle with them from the parent country." Conceding, however, that such a duty rests upon a common carrier, to claim that one is not a common carrier because he has persistently disregarded this duty and has arbitrarily chosen whom he would serve, notwithstanding he has invited the public generally to apply, is to make a public duty determinable by the pleasure of the individual and not by principle or law. We express a doctrine universally sanctioned when we say, that anyone who holds himself out to the public as ready to undertake for hire or reward the transportation of goods from place to place, and so invites custom of the public, is in the estimation of the law a common carrier : Beckman et al. v. Shouse et al., 5 Rawle, 179 ; Verner v. Sweitzer, 32 Pa. 208. There is contrariety of view as to whether a single or occasional engagement to transport for hire, will bring one within the class of common carrier; but that question is not here raised. We are dealing with a case where the carrier made the transportation of household goods part of its regular business, advertised that business in a way to solicit custom from the general public. An unavoidable implication arises that it holds itself in readiness to engage with anyone who might apply. What duty we attach to the relation of common carrier is a matter aside from present inquiry ; the question here is not one of duty but of liability. Whatever the duties may be, they do not establish or determine the relation, but result from the relation. If a carrier is sued for breach of legal duty, the first thing to be determined

is whether he is a common carrier or a private carrier, for the status must first be determined before the duty can be known to exist. The learned judge correctly held that the defendant here was a common carrier. It follows that the burden was on the defendant, in seeking to escape liability for the goods destroyed, to show that the loss was to be referred to some one of the exceptions to the common-law rule.

2. We are disposing of appeals in two cases. In the one, the plaintiff is William F. Lloyd, and in the other Maud P. Lloyd, his wife. The contract for transportation was made with the husband who applied to the defendant company to transport his household effects, no mention being made of the wife's goods. The wife was allowed to recover in a separate action for her own loss. In loading and packing, the goods of the wife were not distinguished from those of the husband; both alike were received by the defendant company at the hands of the husband. Appellant insists that inasmuch as the contract was with the husband alone, it covered only his goods, and did not extend to the wife's. No question was made as to the wife's ownership; the goods she is here claiming for were admittedly her own. The right of action in all such cases follows ownership of the goods, and anyone having a beneficial interest in them may maintain the action. If the action against the company is in tort, it should be brought by the owner of the goods, whether he be consignor, consignee or a third person. Anyone having a beneficial interest in the goods may maintain an action for damages thereto: 6 Cyc. L. & P., p. 510, and the authorities there cited. It is a matter of no consequence at whose hands the carrier may have received the goods; and it does not concern him to know who is the real owner of goods committed to him for transportation. Indeed, under ordinary circumstances, he has no right to inquire, since the law protects him against the real owner if the goods are delivered in pursuance of his employment without notice of his claim : Addison on Torts, sec. 701. The circumstance of ownership can neither add to nor detract from the service that the company engages to render, nor can it make any difference in the consideration he is to receive. It would be intolerable if everyone delivering goods to an express company, for instance, could be required to first establish his

ownership before transportation could be secured. The de-
fendant company makes no pretense that the carrying of the
wife's goods in addition to those of the husband, imposed upon
it any larger or heavier service than was contracted for, or
that it was deceived in any way, or that it would have done
less than it did had the ownership of the wife been disclosed.

3. It appearing that the defendant was a common carrier
and the loss of the goods having been shown, its liability for
the goods became fixed, except as it could bring the loss
within one of the common-law exceptions. In the effort to
do this it utterly failed. The theory defendant advanced was
that the goods were consumed by the fire originating in spon-
taneous combustion. We by no means concede that this would
be such a vis major as would relieve from liability. Sponta-
neous combustion, where loss of goods results, would seem to
imply negligence in greater or less degree. But however this
may be, spontaneous combustion was merely shown to be a pos-
sible cause ; and the expert who testified to this was careful to
say, that the evidence in the case did not indicate any particular
cause of the fire, and that no substance had been mentioned
which would refer it to spontaneous combustion. The court
very properly held that the evidence was not sufficient to jus-
tify a finding in accordance with the theory advanced.

4. The true measure of damages in cases of this character
is compensation. " The market price of an article is only a
means of arriving at compensation ; it is not in itself the value
of the article, but is evidence of value. The law adopts it
as a natural inference of fact, but not as a conclusive legal
presumption. It stands as a criterion of value because it is a
common test of the ability to purchase the thing : " Kountz
v. Kirkpatrick, 72 Pa. 376. " What a thing will bring in the
market at a given time is perhaps the measure of its value
then ; but it is not the only one :" Trout v. Kennedy, 47 Pa.
387. Many of the goods for which compensation is here
asked, were of such a character that their market value could
not compensate for their loss, as, for instance, clothing and
other personal belongings. It cannot be said that they had no
value in the open market, since at public auction they would
most likely have brought something, but manifestly the price
they would have there commanded would not represent their

value to the owner.    Therefore, it is that other considerations than market value govern, with respect to those things which have peculiar value to the owner and little or none in a general market.    Where this is the case the just rule of damages is the actual value of the thing destroyed to him who owns it, taking into account its cost, the practicability and expense of replacing it, and such other considerations as in the particular case affect its value to the owner : Sedgwick on Damages, sec. 251.    And this was the measure that the jury in this case was instructed to observe.    It is true that with respect to many of the goods, including many of the kind of which we have here been speaking, the plaintiffs gave nothing beyond a description of the articles and their cost ; but the defendant could and did on cross-examination inquire into the length of time they had been in use and other matters affecting their value to the owners.    From such data as they had before them it was for the jury to determine the compensation by the standard we have indicated.    The instruction of the court on this point was as follows : " The value of these goods that were lost in the custody of the defendant, is what is called the market value ; that is, as to a great portion of the goods.    As for the goods of a personal nature, such as wearing apparel, and other goods and effects of a personal nature, and which have no market value—and there seems to have been a great many of that kind here—as to those that have no market value, the rule which you will follow is their value to the plaintiffs, not any fanciful or imaginary value they may have put on the articles as may be worth to them only, but what is the value of these articles in money to them—not any valuation outside of their money value." This is a clear, concise and correct statement of the true rule. The assignments of error are overruled.

The judgment is affirmed.