# Automatic Merchandising Company *v.* Delaware & Hudson Company, Appellant.

*Common carriers—Attachment of goods—Void attachment—Act of July 12, 1842, P. L. 339.*

1. Where a common carrier permits goods of another to be taken from its possession by a void writ of attachment, it will be liable to the owner for the value of the goods.

2. A writ of attachment issued under the Act of July 12, 1842, P. L. 339, by a justice of the peace to a constable returnable seven days after the date of the writ and not "not less than two, nor more than four days from the date thereof," is an invalid writ, and if the constable under such a writ is permitted to take goods from the possession of a common carrier, the latter will be liable to the owner for the value of the goods.

Argued March 6, 1911. Appeal, No. 15, March T., 1911, by defendant, from order of C. P. Lackawanna Co., Sept. T., 1909, No. 178, dismissing exceptions to report of referee in case of Automatic Merchandising Company v. Delaware & Hudson Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Exceptions to report of J. W. Carpenter, Esq., referee. The opinion of the Superior Court states the case.

*Errors assigned* were in dismissing exceptions to report of referee.

*W. L. Torrey*, with him *Welles & Torrey* and *R. W. Rymer*, for appellee.—A common carrier is not bound to ascertain that proceedings are regular and not void because of the fact that the defendant is a nonresident of the state and the proceedings are in the form prescribed by the act which has reference to resident debtors only, before delivering up goods to a constable armed with a writ of attachment: Vansyckel's App., 13 Pa. 128; Ohio & Miss. Ry. Co. v. Yohe, 51 Indiana, 181.

It might in some cases become a question of fact for a jury whether a writ is so incomplete and defective and so apparently irregular and void that a garnishee should disregard it; that is, that an ordinary man exercising ordinary intelligence would recognize it as not binding. In this case, however, the defendant would have had to have such knowledge of the law as an ordinary lawyer does not possess to recognize the writ as invalid: Pantall v. Dickey, 123 Pa. 431.

*C. A. Van Wormer,* for appellee.—Had the carrier observed the writ served upon it, it would have discovered that it was returnable seven days from its date while the statute provides that it shall be returnable "not less than two or more than four days from its date." If not returnable according to the act, proceedings will be set aside on certiorari: Brennan v. Taylor, 1 W. N. C. 484.

The alderman had no jurisdiction: Pantall v. Dickey, 123 Pa. 431.

OPINION BY BEAVER, J., May 11, 1911:

The defendant, a common carrier, received from the agent of the plaintiff certain property described in the bill of lading, "10 peanut cans, 10 iron stands, weight 1,000 pounds, consigned to Automatic Mdse. Co., destination Brooklyn, state of New York."

Among the conditions of the bill of lading were contained: "Section 1. The carrier or party in possession of any of the property herein described shall be liable for any loss thereof or damage thereto, except as hereinafter provided.

"No carrier, or party in possession of any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, quarantine, the authority of the law.

"Claims for loss, damage, or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the

property, or, in case of failure to make delivery then, within four months after a reasonable time for delivery has elapsed. Unless claims are so made, the carrier shall not be liable."

The appellant states the question involved as follows: "Is a common carrier liable to a consignor for the value of goods which it fails to deliver according to its contract, the goods having been taken from its possession by a constable upon a writ of attachment, the proceedings upon which the writ issued being coram non judice and void, for the reason that the proceedings were under the Act of July 12, 1842 (P. L. 339, Sections 27 and 28) and the defendant was a foreign corporation, and the writ itself being defective on its face in that it was returnable too late?"

The appellant states the question involved more strongly against itself than would seem to be necessary in order to dispose of the case upon the ground upon which the court below reached its conclusion. The court below said, in passing upon the exceptions to the report of the referee: "Whether its (appellee's) bailee was bound at its peril to know the shipper was a nonresident, or, if not, that, whether it was subject to constructive notice, and as such was put upon inquiry by the nature and circumstances of its contract, and in either event was bound to disregard or contest the attachment, because of the shipper's nonresidence, are questions which, under the view taken of the other features of the case, need not be now considered."

It seems to be sufficient for the purposes of this case and avoids all question as to the notice brought to the appellant by the writ itself that the proceedings were under the Act of 1842, P. L. 339, secs. 27 and 28. Section 28 provides that "Every such attachment shall be made returnable not less than two, nor more than four, days from the date thereof," etc. The attachment which was served upon the appellant was dated January 22, 1909, and in it the return day was fixed on January 29, 1909, seven days after the date of the writ. It was, therefore, not in ac-

cordance with the terms of the act and was, therefore, as shown upon its face, illegal.

The bill of lading provides that the common carrier or party in possession of any of the property therein described shall not be liable for any loss thereof, or damage thereto, or delay caused by the act of God, the public enemy, quarantine, the authority of the law. The only possible ground upon which the carrier could, therefore, excuse itself for its failure to complete the contract was the authority of the law, but the referee has found, and the attachment itself shows, that the appellant surrendered the property in its possession without authority of law and, therefore, had no excuse for its failure to deliver the property, as it undertook to do under its bill of lading.

It is true that under the Act of June 13, 1874, P. L. 285, the defendant might have been relieved of liability under its second section, which provides, "That where goods, wares or merchandise shall be taken from the possession of any warehouseman, wharfinger, carrier or other bailee by writ of attachment, replevin or other legal process, such warehouseman, wharfinger, carrier or other bailee shall not be liable therefor to the owner of such goods, wares or merchandise or to the holder of any receipt, voucher or bill of lading given for the same, saving and reserving, however, to such owner or holder all legal remedies for the recovery of the said goods, wares or merchandise from any person unlawfully detaining the same, or for the recovery of damages against any person unlawfully taking the same." But the defendant, the appellant here, has not been brought, as we view the case, under the provisions of this act of 1874. It is only where goods, wares or merchandise shall be taken from the possession of any warehouseman, wharfinger, carrier or other bailee, by writ of attachment, replevin or other legal process, that the act applies. But there was no valid writ of attachment in the case; it was entirely void, as the appellant admits, but the clear implication of the law is that the goods must be taken by some legal process, and as they were confessedly not

taken by legal process but by a void attachment, we cannot understand how the appellant can take advantage of the provisions of this act.

The question, therefore, simply narrows itself down to the liability of the defendant under the void attachment which was served upon it and under which it delivered the goods to the constable serving it.

Leaving out of view, therefore, entirely, the fact that the defendant was a foreign corporation, as alleged in the appellant's statement of the question involved, and assuming, as the question assumes, that the proceedings were under the Act of 1842, P. L. 339, and the writ itself being defective on its face in that it was returnable too late, we see no reason why the defendant should not be held to its full liability as bailee as a common carrier, as provided under its own contract. This seems to be the ground upon which the court below ruled the case and we are in entire accord with the disposition which was made of it for that reason.

If authority be needed for such a plain proposition, it is to be found in Pantall v. Dickey, 123 Pa. 431, in which the court, referring to an attachment issued under the act of 1842, says: "The language of the section is peremptory, commanding that the defendant shall be proceeded against by summons returnable not less than two, nor more than four, days from its date. There were six days intervening between the issue and the return of the writ in this case, and the act was, therefore, clearly and palpably transgressed. If there was no lawful writ, there was no jurisdiction of the alderman to entertain the case, and hence he could render no valid judgment. Of course, the judgment could have been and would have been reversed upon certiorari. But the judgment being void for want of jurisdiction to enter it, it matters not how, or in what mode, or at what time the objection on that ground is brought to the attention of a supervising court. Being void, it has no efficacy at any time."

In Lloyd v. Haugh & Keenan Storage & Transfer Co.,

223 Pa. 148, it was said: "If a carrier is sued for breach of legal duty, the first thing to be determined is whether he is a common carrier or a private carrier, for the status must first be determined before the duty can be known to exist. The learned judge correctly held that the defendant here was a common carrier. It follows that the burden was on the defendant, in seeking to escape liability for the goods destroyed, to show that the loss was to be referred to some one of the exceptions to the common-law rule." That burden rested upon the defendant here, and, having failed to bring itself within the provisions of the act of 1874, it should be held to be subject to its common law liability, unless the evidence clearly shows that it was within one of the exceptions to the common-law rule. This, as we understand it, is not claimed and, therefore, that liability, as already intimated, should prevail.

The judgment is, therefore, affirmed.

HEAD, J., dissenting:

At common law the carrier was relieved from the obligation to deliver goods to the consignee, if they were taken from him by valid legal process. But the burden was upon the carrier, at his peril, to see that the process was warranted by the authority to which both shipper and carrier must submit.

When our legislature, by the Act of September 24, 1866, P. L. 1867, 1363, made bills of lading negotiable, it still recognized the common-law duty of the carrier, because in sec. 6 it provided, "that so much of this act as forbids the delivery of property except on surrender, etc., of the bill of lading shall not apply to property replevied or removed by operation of law."

By 1874 the business of common carriers here had so tremendously outgrown the proportions contemplated by the common law, that the burden of the rule stated must have become so onerous as to invite legislative relief. Accordingly the Act of June 13, 1874, P. L. 285, provided in sec. 2 "That where goods shall be taken from

the possession of any carrier by writ of attachment . . . . or other legal process, such carrier shall not be liable therefor to the owner . . . . saving and reserving to such owner &c. all legal remedies for the recovery of said goods from any person unlawfully detaining the same, or for the recovery of damages against any person unlawfully taking the same."

Now if the burden of the carrier was to remain as at common law, there was no occasion for the enactment quoted. It would mean nothing, and the majority opinion gives it neither force nor significance. The case is treated as if the act had never been passed.

I concede that the carrier, even since the act of 1874, could not safely deliver goods to a stranger with a forged paper, on his mere assertion that it was a writ. Nor upon a genuine writ issued by a court that had no jurisdiction over such matters, as for example a writ of replevin issued by an orphans' court. But here we have the goods taken by a duly elected constable, armed with a genuine writ issued by a magistrate to whom jurisdiction is given by statute to attach property in the custody of a carrier. True the writ was not made returnable as the act requires, and this is the ground on which our judgment is rested. If it had been the carrier would have been justified, even at common law, in surrendering the property. If because there was this irregularity in the writ, the act of 1874 does not relieve the carrier, I repeat I can see no reason for its enactment.

I would therefore reverse the judgment and compel the plaintiff to recover his property or his damages from the persons respectively made liable by the act of 1874.

MORRISON and PORTER, JJ., concur in this dissent.