## LAWSON *v.* JUDGE OF THE RECORDER'S COURT OF THE CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—ORDINANCES—MOVING VANS—REGULATION.

   Draymen, truckmen, and drivers of moving vans being common carriers, are subject to regulation by the council of a municipality.[1]

2. SAME—REASONABLENESS.

   An ordinance of the city of Detroit requiring drivers of moving vans, etc., to keep a record of the place from which and the place to which they transport household furniture, name of the owner, and to file weekly statements thereof with the police commissioner, is a reasonable regulation and supports a prosecution commenced under its provisions.

3. SAME—COMMON CARRIER—WORDS AND PHRASES.

   A common carrier is one who undertakes for hire to transport the goods of such as choose to employ him, from place to place.

4. SAME.

   In determining the reasonableness or unreasonableness of ordinances, the court will consider all the circumstances and conditions of the particular city, the objects sought to be attained, and the necessity which exists for regulation; as provisions which may be proper for a large town might in a smaller place be oppressive or absurd.

Mandamus by Richard I. Lawson, corporation counsel of the city of Detroit, against William F. Connolly, judge of the recorder's court of said city, to compel respondent to vacate an order dismissing certain proceedings for the violation of a municipal ordinance.

---

[1] On the question of character as common carriers of persons or corporations other than express companies that neither own nor operate transportation routes, but undertake to transport goods, see note in 42 L. R. A. (N. S.) 902.

As to whether a cartman, etc., is a common carrier, see note in 21 L. R. A. (N. S.) 188.

Submitted February 18, 1913. (Calendar No. 25,493.) Writ granted May 28, 1913.

*Thomas P. Penniman (Thomas J. Mahon,* of counsel), for relator.

*Lodge & Brown,* for respondent.

KUHN, J. Mandamus is sought to compel respondent to entertain a complaint made for an alleged violation of an ordinance enacted by the city of Detroit regulating the business of public moving vans. The section of the ordinance in question is as follows:

"Sec. 6. Any public moving van driver shall be entitled to receive the compensation provided in this ordinance immediately upon the transportation of his load. Each driver shall keep a record of the place from and the place to which he moves the household furniture of any person and the person for whom the same was moved; and on Monday of each week he shall file with the police commissioner a statement containing every such transaction of the previous week. The blanks shall be furnished free of charge upon application to the city clerk."

The respondent refused to entertain the complaint, holding the section void as an unreasonable regulation because it placed a burden upon the companies for which no compensation is provided and was an unwarranted interference with their business. The sole question before us is whether the city of Detroit, by virtue of the police power, had the authority to enact the ordinance.

Persons who are engaged in the business of draymen or truckmen for transportation of goods and merchandise within a city are held to be common carriers. A common carrier has been defined as "one who undertakes for hire or reward to transport the goods of such as choose to employ him from place to place." 6 Cyc. p. 365. The business of a public moving van company clearly comes within this definition, and

there can be no question that they carry on their business subject to the rules governing common carriers. The business being public in character, it has been repeatedly held by the courts that it is subject to reasonable public regulation.

"In the exercise of this control, it has been customary in the United States from its first colonization to regulate ferries, common carriers, hackmen, bakers, millers, wharfingers, innkeepers, and other similar employments, and in so doing to fix a maximum of charge to be made for services rendered, accommodations furnished, and articles sold." *Munn* v. *Illinois*, 94 U. S. 113.

The business of the companies being of a class of business subject to police regulation, a clear abuse of such power must be shown in order to warrant the courts in setting aside and declaring void the legislative act. Dillon, in his work on Municipal Corporations (5th Ed.), vol. 2, § 599, referring to the power of the courts to review the reasonableness of the legislative requirements, says:

"But in determining this question the court will have to regard all the circumstances of the particular city or corporation, the objects sought to be attained, and the necessity which exists for the ordinance. Regulations proper for a large and prosperous city might be absurd or oppressive in a small and sparsely populated town, or in the country."

In the case of *City of Grand Rapids* v. *Braudy*, 105 Mich. 670, 675 (64 N. W. 29, 31, 32 L. R. A. 116, 55 Am. St. Rep. 472), where an ordinance requiring pawnbrokers to deliver daily to the chief of police a statement of their transactions of the previous day was being considered, this court said:

"Courts cannot interfere with legislative discretion, and are slow to declare ordinances invalid because unreasonable, when the power to legislate upon the subject has been conferred upon the common council. The council's discretion, and not the court's, must

control. In such matters the city authorities are usually better judges than the courts."

In the same opinion, on page 676, the court said:

"There is nothing unreasonable in requiring such persons to keep a record of their purchases, and to furnish a statement thereof to the police department. This provision is no more unreasonable, and certainly is as essential for the protection of society, as the law regulating druggists, which requires them to record in a book the names of all persons applying for intoxicating liquors, the date of sale, the amount and kind of liquor sold, and the purpose for which the same was to be applied."

Counsel for relator say:

"It is a well-known fact that, in large and populous cities, tenements and their occupants are often breeding places for infectious and contagious diseases; that many times, because of the ignorance or poverty, or even fear of the tenants, such conditions are concealed from the public health officers, thereby endangering the health not of one but of many. The vehicle owners that have practically a monopoly of transportation should not be heard to complain of an ordinance which will assist our public health officers in the great work of sanitation and disease suppression. If it be contended that as a result of the enforcement of this ordinance merchants will know the whereabouts of 'dead beats' and undesirable customers, we may answer that such an argument only demonstrates that the ordinance is as well in the interest of promoting the morals as well as the health of the community, both of which are proper subjects of the exercise of police power."

This statement is criticised by counsel for respondent, and it is urged that it is absurd to claim that the provision is in the interest of either the public health, safety, or morals. While it may be problematical how much the public health, morals, or safety are subserved thereby, it does not seem to us that the requirements of the section are so unreasonable as to

warrant the court in overruling the legislative determination and holding it void.

We are therefore of the opinion that the ordinance is valid, and the respondent is directed to entertain the complaint and proceed with the trial as prayed for.

Writ granted.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ. concurred.