# TERMINAL TAXICAB COMPANY *v.* HARDING.*

COMMON CARRIERS; PUBLIC UTILITIES; AUTOMOBILES.

1. A taxicab company is an agency for public use for the conveyance of persons or property within the District of Columbia for hire, within the meaning of the act of Congress of March 14, 1913 (37 Stat. at L. 974, chap. 150), and, as such, subject to the jurisdiction of the Public Utilities Commission of the District as a public utility, where it transports passengers for hire by means of automobiles from and to a union railroad station under a contract with the company owning the station, whereby the latter receives a portion of its gross receipts; is also under contract with hotels to furnish livery service for guests, and maintains garages from which its automobiles may be ordered by telephone; although every customer is entitled to the exclusive use of the vehicle hired and has the right to direct the destination of the vehicle at his pleasure, and although it asserts the right to refuse to carry any person applying for a vehicle, and does not solicit patronage on the public streets.

2. Where it is claimed that the Public Utilities Commission of this District has jurisdiction over a taxicab company as a public utility under the act of Congress creating the Commission, it is no defense to such a company which denies the jurisdiction of the Commission, that the Commission has failed to assume jurisdiction over others engaged in the same character of business; the question being, whether the company, and not another, is a common carrier.

No. 2691. Submitted November 5, 1914. Decided February 1, 1915.

HEARING on an appeal by the plaintiff from a decree of the Supreme Court of the District of Columbia, dismissing a bill of complaint against the members of the Public Utilities Commission of the District to restrain them from assuming jurisdiction over the plaintiff as a public utility under the act of Congress creating that Commission.          *Affirmed.*

---

*\*Common Carriers.*—For authorities passing upon cartman, baggage transfer company, etc., as common carrier, see notes to *Anniston Transfer Co.* v. *Gurley,* 34 L.R.A. 137, and *Lloyd* v. *Haugh & K. Storage & Transfer Co.* 21 L.R.A.(N.S.) 188.

The COURT in the opinion stated the facts as follows:

This appeal is from a decree in the supreme court of the District, dismissing appellant's bill against the Public Utilities Commission of the District to restrain that Commission from assuming jurisdiction over the appellant as a public utility under sec. 8 of the act of March 4, 1913, 37 Stat. at L. 974, chap. 150. The term "public utility," as used in that section, embraces "every  .  .  .  street railroad corporation, *common carrier,* gas plant, gas corporation, electric plant, electrical corporation, water power company, telephone corporation, telephone line, telegraph corporation, telegraph line, and pipe line company." The term "common carrier" is declared to include "express companies, and every corporation, street railroad corporation, company, association, joint stock company or association, partnership, and persons, their lessees, trustees or receivers appointed by any court whatsoever owning, operating, controlling or managing *any agency or agencies for public use for* the conveyance of persons or property within the District of Columbia for hire."

From the agreed statement of the case the following facts appear: The Taxicab Company, although located and doing business in the District of Columbia, was incorporated under the laws of the State of Virginia. By the terms of its charter it is authorized "to transfer, carry, and transport by means of such taxicabs, locomobiles, motorcycles, power boats, and vehicles of every kind, nature and description, whether propelled by horse or mechanical power, passengers, goods, baggage, merchandise, and other personal property of every kind, nature and description, from or to any points or places in the United States or elsewhere; but not to exercise any of the powers of a public service corporation." The company operates about seventy-five automobiles, including taxicabs, touring cars, and limousines. It maintains its own repair shops, in which it occasionally builds cars. It is under contract with the Washington Terminal Company, which owns and operates the Union Railroad Station, and by the terms of that contract the Terminal Company

has leased for a term of years to the Taxicab Company the right to occupy certain portions of the Union Station for the purpose of maintaining an establishment, including office accommodations, where automobiles are kept for hire, and of operating therefrom a cab service. The Taxicab Company also has the exclusive right and privileges of soliciting livery and taxicab business from any and all persons passing through said station to and from trains, or otherwise patronizing the same, and must provide a service sufficient in the judgment of the Terminal Company to accommodate all persons using such station. In consideration for such lease and privilege, the Taxicab Company pays to the Terminal Company a percentage of its gross receipts from such business.

The Taxicab Company also is under contract with several of the hotels of the city to furnish livery service for the guests of those hotels. In addition to this, it maintains a number of automobiles at its central garage at 1231 Twentieth street, N. W., for general use, and advertises on theater programs, in the newspapers, and prominently on the back of telephone directories, setting out the excellence of its service "and featuring the fact that its vehicles may be obtained by telephoning to its garage, the telephone number of which is North 1212. It makes every effort to extend its business, and particularly by encouraging the use of the telephone to its garage, for securing its service." Thirty-five per cent of the 203,000 service trips which were made during the last fiscal year ending April 30, 1913, originated at the Union Station. Forty per cent originated at its central garage, and twenty-five per cent originated at the various hotels with which the company had contracts. Practically all of the business which originated at the central garage was arranged for by telephone.

The customer or patron of the Taxicab Company is entitled to the exclusive use of the vehicle for the time being, and has the right to direct the destination of such vehicle at his pleasure. Many of the service charges made are determined by the special character of the business to be performed, the rates being made with the customer by special agreement. The company claims

to run its business on the same principle as a private livery. It does not undertake to carry any person who does not apply at its place of business by telephone or otherwise, except such as come within its contract with the Terminal Company, hotels, department stores, theaters, etc. It refuses to carry persons whom it has reason to doubt would pay for the service when rendered, and claims the right to refuse to carry for any reason whatsoever.

*Mr. G. Thomas Dunlop* for the appellant.

*Mr. Conrad H. Syme,* Corporation Counsel, for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

Is this Taxicab Company an agency "for public use for the conveyance of persons or property within the District of Columbia for hire?" If it is, the law clothes the Public Utilities Commission with jurisdiction to control and regulate its rates and service in the public interest. The contention is made that it is merely doing "a private livery business," and hence that it is not within the purview of this statute. In support of this contention it is said that the company does not carry all persons indiscriminately; that the vehicle employed in a particular service is for the exclusive use of the passenger or passengers carried; that the company does not solicit patronage on the public streets, and that the service rendered at the Union Station is "a private service under the complete control of the Washington Terminal Company."

In the exercise of the power of governmental regulation "it has been customary in England from time immemorial, and in this country from its first colonization, to regulate ferries, common carriers, *hackmen,* bakers, millers, wharfingers, innkeepers, etc., and in doing so to fix a maximum of charge to be made for services rendered, accommodations furnished, and articles sold." *Munn* v. *Illinois,* 94 U. S. 113, 125, 24 L. ed. 77, 84. The word "taxicab" has come into use as aptly descriptive of a

*cab* operated by motor power, electricity, or other artificial
means, and it has been held to be included in the class of com-
mon carriers. *Lynch* v. *Robert P. Murphy Hotel Co.* 112 N. Y.
Supp. 915; *Donnelly* v. *Philadelphia & R. R. Co.* 53 Pa.
Super. Ct. 78. In the brief of counsel for appellant taxicabs
are described as "vehicles equipped with a mechanical device
which registers the distance traveled and the charge therefor."
The name, therefore, by which appellant has chosen to be
known, implies that it is engaged in a public, and not a pri-
vate, business, and the vehicles which it employs in carrying
on that business are of such known character as to invite pub-
lic patronage generally. Moreover, this Taxicab Company,
through its advertisements, holds itself out as an agency for
public use, for it invites patronage indiscriminately. Whether,
after having invited the public generally to apply, it has in
some instances arbitrarily chosen whom it would serve, the char-
acter of its business has not been changed. *Lloyd* v. *Haugh &
K. Storage & Transfer Co.* 223 Pa. 148, 21 L.R.A.(N.S.)
188, 72 Atl. 516. As to its service at the Union Station, there
is no pretense that it does otherwise than serve, as under its
contract and public duty it is required to do, all persons using
that station. It is of no consequence that it does not solicit
business upon the streets of the city, since it is not necessary
to justify regulation of a business that it be of a monopolistic
character. *Brass* v. *North Dakota,* 153 U. S. 391, 38 L. ed.
757, 4 Inters. Com. Rep. 670, 14 Sup. Ct. Rep. 857; *German
Alliance Ins. Co.* v. *Kansas,* 233 U. S. 389, 410, 58 L. ed. 1011,
1021, L.R.A. 1915C, 1189, 34 Sup. Ct. Rep. 612. It may be
suggested, however, that if a service extending over three or
four city blocks was required, time could be saved by telephon-
ing for a taxicab, even although a horse-drawn vehicle stood at
the curb. This probably is the real reason why it is not deemed
necessary to solicit business on the streets. Nor does it matter
that a passenger is given that for which he pays, the exclusive
use of a vehicle for the trip. One engaging the use of a moving
van to move his household goods is entitled to its exclusive use,
but the proprietor nevertheless is a common carrier if he holds

himself out as a mover of goods for the general public. *Lloyd* v. *Haugh & K. Storage & Transfer Co. supra; Lawson* v. *Judge of Recorder's Ct.* (*Lawson* v. *Connolly*) 175 Mich. 375, 45 L.R.A.(N.S.) 1152, 141 N. W. 623. It is a matter of general knowledge that the trolley car, the elevated railway, the subway, the herdic, and the taxicab have wrought a radical change in urban travel. Each serves a particular public purpose, and each, to a marked degree, affects the public. This was so well known to Congress that it employed the comprehensive language found in the act under consideration. If the business of insurance is so far affected with a public interest as to justify legislative regulation, and the Supreme Court has ruled that it is (*German Alliance Ins. Co.* v. *Kansas,* 233 U. S. 389, 58 L. ed. 1011, L.R.A. 1915C, 1189, 34 Sup. Ct. Rep. 612), surely the business of this Taxicab Company is affected with a like interest. We think the company is a common carrier within the scope, intent, and meaning of the public utilities act. Its business is public, and not private, and that business should be and is subject to reasonable regulation for the benefit of the public.

In appellant's amended bill it is averred that the Commission has failed to assume jurisdiction over others engaged in the same character of business, and it is here contended that "if the act is to be construed as permitting the Commission to single out the appellant company for regulation and control from among others of the same class, it is unconstitutional and void." In the agreed statement of the case it is conceded by the Utilities Commission that it has not assumed jurisdiction over certain public hackmen and automobile livery concerns "for the reason that the Commission did not consider that they did business sufficiently large to come within the meaning of the public utilities act as construed by said Commission."

The act does not confer upon the Commission arbitrary power. It defines a common carrier, and all answering the terms of that description are within the purview of the act. Whether or not the Commission has erred in a given case has no bearing

upon the question here involved. In other words, the question here is whether the appellant, and not some other corporation, is a common carrier. *Yick Wo* v. *Hopkins,* 118 U. S. 356, 30 L. ed. 220, 6 Sup. Ct. Rep. 1064, cited by appellant, involved the constitutionality of a municipal ordinance to regulate the carrying on of public laundries within the limits of a municipality, and which conferred upon the municipal authorities arbitrary power to give or withhold consent as to persons or places without regard to the competency of the persons applying or the propriety of the place selected for the carrying on of the business. In the present case, as above suggested, all falling within the defined class, without exception, are brought within the scope of the act. There is, therefore, no room for the exercise of arbitrary power by the Commission.

Decree affirmed, with costs.                    *Affirmed.*

An appeal by the appellant to the Supreme Court of the United States was allowed February 5, 1915.