JONES *v.* FERGUSON.

Opinion delivered April 7, 1930.

*Edward Gordon,* for appellant.

*Bolon B. Turner* and *Brooks Hays,* for appellee.

MEHAFFY, J. This action was begun by R. P. Ferguson, appellee, against A. Jones, appellant, to restrain Jones, his agents, servants and employees, from operating a motor transportation business for carrying freight for compensation between Little Rock and Morrilton. The facts necessary to be stated are as follows: The appellee, R. P. Ferguson, holds a license certificate to operate a freight transportation line between Morrilton and Little Rock, and it is agreed that said license certificate is valid and in full force and effect. The said license certificate was granted to Ferguson prior to the time that appellant made an application for a license certificate. The appellant bought a truck for the purpose of hauling freight between Little Rock and Morrilton for compensation and applied to the railroad commission for a permit or license, and his request was denied. He had paid $400 or $500 on the truck before his request was denied, concluded that, since his license was denied him, he could not pay for the truck and took it back to the seller expecting to lose what he had paid. Ten citizens of Morrilton paid for the truck and entered into a contract with Jones to haul freight for them between Morrilton and Little Rock, and they agreed to pay him the regular schedule rates being charged by truck lines so long as Jones would haul only and exclusively for them and not haul for the general public. Jones accepted these conditions and agreed to haul freight for the parties signing the contract and agreed that he

would not haul for the public. Several witnesses testified about the contract, and the evidence showed that Jones hauled freight for the persons with whom he contracted and refused to haul freight for any other persons and did not hold himself out to the public as a common carrier.

There is no dispute about the facts, and it is therefore unnecessary to set out the testimony in full.

The court entered a decree for a permanent injunction as prayed for in the petition, holding that the practice of Jones in securing from certain merchants and shippers in Morrilton contracts of employment to haul freight for said parties does not change the character of defendant's operations as a public carrier within the meaning of the provisions of act 99 of the General Assembly of Arkansas of 1927, and other legislative acts regulating cars for hire, using the highways of this State. To reverse this decree, appellant prosecutes this appeal.

Appellee makes the following statement in his brief: "We concede, of course, that the commission is without authority to require one who is truly a private carrier to become a public carrier, but it is clear from appellant's testimony in this case that the carrier has continuously acted as a public carrier and is attempting by his 'contract of employment,' to disguise his real operations."

The only question for our consideration is, whether Jones was a public carrier or a private carrier. The law recognizes two classes of carriers, viz: private carriers and common carriers. All persons who undertake for hire to carry the goods for another belong to one or the other of these classes. A private carrier is not bound to carry for any reason unless it enters into a special agreement to do so. A common carrier is bound to carry for all who offer such goods as it is accustomed to carry, and tender reasonable compensation for carrying them. 4 R. C. L. 549.

A common carrier is one that holds itself out as ready to engage in the transportation of goods for hire as a

public employment and not as a casual occupation. 10 C. J. 41.

A common carrier is not only one who holds itself out as engaged in the business for the public, but it is required to carry for all who offer their goods. It is a public service and is therefore subject to regulation; a private carrier is not. A private carrier does not hold itself out as engaged in the business for the public and is therefore not subject to regulation as a common carrier. The act relied on by appellee does not authorize the railroad commission to regulate private carriers, but only public carriers and the Railroad Commission would have no authority to regulate the business of a private carrier or the private business of any one. While they have jurisdiction over the highways, the act in question is not an act to regulate traffic or travel on the highways, but that part of the act relied on by appellee undertakes to regulate the business of the parties to whom it applies. We said in a recent case: ''Each of the appellant carriers held itself out to the public as ready to undertake for hire the transportation of goods or passengers from place to place in the city of Little Rock, or from points in the city of Little Rock to places in the city of North Little Rock, or places along the public highways in the country and thus solicited the patronage of the public, although it claimed the right to reject customers for cause. Its general business was with the public, and each solicited customers from the general public. The same was true of the undertaking establishment. It operated ambulances, carried sick and injured persons to hospitals, homes and railway stations at uniform charges. Each of the appellants solicited business from the general public by advertisement. Hence we are of the opinion that the court did not err in holding that appellant came within the regulatory provisions of the statutes.'' *Merchants' Transfer & Warehouse Co.* v. *Gates,* 180 Ark. 96, 12 S. W. (2d) 406; *Arkadelphia Milling Co.* v. *Smoker Mdse. Co.,* 100 Ark. 37, 139 S. W. 680; *Lloyd* v. *Haugh & Keenan Trans-*

*fer & Storage Co.*, 223 Pa. 148, 72 Atl. 516, 21 L. R. A. N. S. 188.

The undisputed evidence in the instant case shows that appellant did not hold himself out to the public as ready to undertake for hire the transportation of goods or passengers. His general business is not with the public; he does not solicit customers from the general public, and, therefore, under the case just cited, he does not come within the regulatory provisions of the statutes.

Appellee in discussing the case of *Michigan Public Utilities Commission* v. *Duke,* 266 U. S. 570, 45 S. Ct. 191, says: "It is held by the Supreme Court in that case that it is beyond the power of the State by legislative fiat to convert property used exclusively in the business of a private carrier into a public carrier," and concedes that the soundness of this position cannot be questioned; but appellee says that the carrier in the case referred to had contracts with only three shippers. That is true, he had contracts with but three persons, but he employed seventy-five men and operated forty-seven motor trucks and trailers upon the public highways of Michigan, which formed part of the route between Detroit and Toledo. In the instant case, appellant has but one truck, and although, in the Duke case above referred to, there were only three contracts, yet it appears that the business done by this carrier was many times greater than the business done by appellant. The Michigan act is substantially the same as our act. It provides that no person should engage or continue in the business of transporting persons or property by motor vehicle for hire upon the public highways of the State over fixed routes or between fixed termini, unless he shall have obtained from the Michigan Public Utilities Commission a permit so to do. The act then prescribes just how the permit shall be granted. In the Duke case, it is further said: "Moreover, it is beyond the power of the State by legislative fiat to convert property used exclusively in

the business of a private carrier into a public utility, or to make the owner a public carrier, for that would be taking private property for public use, without just compensation, which no State can do consistently with the due process of law clause of the fourteenth amendment.''

Appellee then discusses the case of *Marion L. Frost v. Railroad Commission of the State of California*, 271 U. S. 583, 46 S. Ct. 605, 70 Law. Ed. 701, and shows that there was a single contract, hauling only one commodity, and says that that case can hardly throw any light on the question before the court on this appeal. It is also argued that the court in that case specifically disclaimed passing upon the question here presented. In that case, the commission agreed that Frost was a private carrier, but held that he was subject to the provisions of the act. The commission's order was upheld by the Supreme Court of the State of California. The court said: ''It is very clear that the act as thus applied, is in no real sense a regulation of the use of the public highways. It is a regulation of the business of those who are engaged in using them. Its principal purpose evidently is to protect the business of those who are common carriers, in fact, by controlling competitive conditions. Protection or conservation of the highways is not involved.'' The court further said: ''That consistently with the due process clause of the fourteenth amendment, a private carrier cannot be converted against his will into a common carrier by mere legislative command, is a rule not open to doubt and is not brought in question here '' The court continued: ''We hold that the act under review as applied by the court below, violates the rights of the plaintiff in error, as guaranteed by the due process clause of the fourteenth amendment, and that the privilege of using the highways of California in the performance of their contract is not and cannot be affected by the unconstitutional condition imposed.''

The act of the Legislature involved is valid but it has no application to private carriers. Since the appel-

lant in this case does not solicit business from the public, does not hold himself out as ready to serve the public, and refuses to accept freight, as the undisputed evidence shows, from the public, he is not a common carrier but a private carrier, and the chancery court erred in holding that the practice of defendant in securing from certain merchants and shippers of Morrilton contracts of employment to haul freight for said parties does not change the character of defendant's operations as a private carrier within the meaning of the act.

There is no evidence in this case of fraud, or any attempt to evade the law. The undisputed evidence showing that appellant does not hold himself out to serve the public, but has refused to take freight for anybody except those with whom he has the contract, and, as said in the case of *Frost* v. *The California Railroad Commission,* "It is enough to say that no such case is presented here, and we are not to be understood as challenging the power of the State or railroad commission under the present statute, whenever it shall appear that a carrier posing as a private carrier is in substance and reality a common carrier, to so declare and regulate his or its operations accordingly."

The decree of the chancery court is reversed, and the case is dismissed.