[No. 12720. *En Banc.* April 22, 1915.]

The State of Washington, *on the Relation of Lucy R. Case, Plaintiff,* v. I. M. Howell, *Secretary of State, Respondent.*[1]

Statutes — Referendum — Time of Taking Effect—Emergency. The legislative enactment (Laws 1915, p. 227) for the regulation of motor propelled vehicles along streets and highways · as common carriers of passengers by requiring the persons so operating them to take out permits and execute surety bonds to pay all damages sustained by persons injured in the conduct of the business of transporting passengers, and by providing for civil actions to recover against the carrier and his bondsman for the negligence of the carrier, is an attempt at regulation, even if not wholly adequate; and if a state of facts can reasonably be presumed to exist ·which would justify the legislation, courts must presume that the law was passed for that reason as an exercise of police power; and, its necessity being doubtful, the question of emergency will be treated as a legislative question, and the doubt resolved in favor of the declaration of emergency made by the legislative body.

Same. The declaration of immediate emergency existing at the date of the enactment of a law, followed by the declaration that it shall take effect thirty days thereafter, is not such a contradiction in terms as to make invalid the emergency provisions; since laws take effect immediately, although their operation may be deferred for a time, and the intent of the law was merely to give those affected a reasonable period of time in which to adjust themselves to the changed condition effected by the law.

Same. The word "immediate," as used in art. 2, § 1, subd. b, of the state constitution excepting from the right of referendum emergency legislation in matters of the "preservation of public peace, health or safety," does not import the exclusion of any interval of time, but there is a certain latitude to be given the significance of the word, and it may mean "close to" the time of enacting the law, and that it is within the power of the legislature to cause it to take effect at a future date with reference to the operation of the act.

Application filed in the supreme· court March 29, 1915, for a writ of mandamus to compel the secretary of state to

[1] Reported in 147 Pac. 1159.

file an act proposed for submission to a referendum vote. Denied.

*Hugh C. Todd, Ashton Dovell,* and *Thomas Corkery,* for relator.

*The Attorney General,* for respondent.

HOLCOMB, J.—The legislature of the state at its session just closed passed an act entitled:

"An act relating to and regulating common carriers of passengers upon public streets, roads and highways, providing for the issuance of permits; prescribing penalties for violations, and providing when this act shall take effect." Laws 1915, p. 227.

Section 1 of the act provides that it shall be unlawful to engage in the business of carrying or transporting passengers for hire in any motor propelled vehicle along any public street, road or highway within the corporate limits of any city of the first class, without having first obtained the permit as mentioned in the subsequent sections. Section 2 provides that every person, firm or corporation, desiring to engage in the business of carrying or transporting passengers for hire in any motor propelled vehicle over and along any public street, road or highway in any city of the first class, shall apply to the secretary of state for a permit so to do. For each motor vehicle intended to be operated, the applicant shall deposit and keep on file with the secretary of state a surety company bond, running to the state of Washington, in the penal sum of $2,500, to be approved by the secretary of state, conditioned for the faithful compliance by the principal with the provisions of the act, and to pay all damages which may be sustained by persons injured by reason of any careless, negligent, or unlawful act on the part of the principal, his agents or employees, in the conduct of his business in transporting passengers, and this section further provides for the payment of a fee of five dollars to the secretary of state. Section 3 provides that every person injured by the

careless, negligent or unlawful act of any person or corporation operating under such permit, or his personal representatives named in the act, shall have a cause of action against the principal and the surety upon the bond for the amount of damages sustained.   The liability of the surety, however, is expressly limited to the amount of the bond.   Section 4 provides that every person or corporation operating any motor propelled vehicle without the requisite permit shall be guilty of a gross misdemeanor.   Section 5 provides that, if any part of the act is held invalid by any court, the remainder of the act shall nevertheless be valid.   Section 6 provides:

"This act is necessary for the immediate preservation of the public safety, and shall take effect April 10, 1915." Laws 1915, p. 229.

The relator in this case claims the right to have this act referred to a vote of the people.   To that end, as she alleges in her application, she has·offered to the secretary of state, for filing, the requisite affidavit.   The secretary of state, believing that the legislative declaration that the immediate preservation of the public safety requires that the act shall take effect April 10, 1915, is operative, and results in the act not being subject to a referendum vote, declined to receive and file the documents tendered.   This action in mandamus is prosecuted to compel the secretary of state to accept and file the proffered documents.   The secretary of state has demurred to the affidavit on the ground that it fails to state facts sufficient to constitute a cause of action.   Without waiving the demurrer, an answer has been interposed.

I.   In *State ex rel. Brislawn v. Meath*, 84 Wash. 302, 147 Pac. 11, we held:

"The true rule is:   the referendum cannot be withheld by the legislature in any case except it be where the act touches the immediate preservation of the public peace, health, or safety,   .   .   .   If the act be doubtful, the question of emergency will be treated as a legislative question, and the doubt resolved in favor of the declaration of emergency made by the legislative body."

The relator contends that the act in question nowhere touches any of the conditions justifying the emergency clause.

An act of the legislature of a state is only to be overthrown by virtue of some specific limitation or prohibition in the paramount law. *Forsythe v. City of Hammond,* 68 Fed. 774; *Jacobson v. Massachusetts,* 197 U. S. 11. If, as laid down in the *Brislawn* case, it manifestly appeared on the face of the act that there was no touching of the public peace, health or safety, then such legislative dissimulation would not support a mere declaration thereof, for it is only in cases of obvious and undoubted legislative dissimulation as regards the police power that such legislation cannot and should not be upheld by the courts. *State ex rel. Brislawn v. Meath, supra; Mugler v. Kansas,* 123 U. S. 623; *Sentell v. New Orleans etc. R. Co.,* 166 U. S. 698; *Hawker v. New York,* 170 U. S. 189; *Holden v. Hardy,* 169 U. S. 366. And, as was stated in *Mugler v. Kansas, supra:*

"The courts are not bound by mere forms, nor are they misled by mere pretences. They are at liberty—indeed, are under the solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to promote the public health, the public morals, or the public safety, has no real or substantial relation to these objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the constitution."

On the other hand, however, it is equally well settled that the courts should not declare a law repugnant to the constitution without a strong conviction divested of all reasonable doubt. *Ah Lim v. Territory,* 1 Wash. 156, 24 Pac. 588, 9 L. R. A. 395. The existence of a reasonable doubt acquits an act of violence to the constitution. "Where doubt exists . . . the act is sustained." *State ex rel. School Dist. No. 24 v. Grimes,* 7 Wash. 270, 34 Pac. 836. Now the act in

question does two things of importance as legislative functions, viz.: (1) it recognizes a new sort of common carrier; and (2) it enacts a system of regulation of such common carriers. It is true that it does not limit the speed of such passenger cars, nor the number to be permitted on given streets, nor the capacity of the car, nor the routes, nor rules of the road. It does, however, regulate them to the extent of requiring them to obtain permits from the secretary of state to operate, and to furnish a surety bond in a specified amount to the approval of the licensing officer, with specified conditions therein; and provides for civil actions to recover against the carrier and the bond for any injury occasioned by the negligence or unlawful act of such carrier.

The question of the validity of the act as a whole is not before us, not being raised by such proceeding as this. Nor is the question of the wisdom, policy, expediency, or effectiveness of the law. The reasonable regulation of common carriers by legislation has always been recognized as a proper exercise of the police power touching the safety and the welfare of the public. No citation of authorities is deemed necessary to sustain the above statement in these terms. Whatever, therefore, may be the general effectiveness of this law as to regulating such common carriers, it certainly can be said with conviction that it is an attempt at such regulation. For instance, it may have the effect of limiting the number of such carriers upon the streets by the restraints put upon them; and it may conduce to the safety of passengers carried by such vehicles and others upon the streets by the restraints placed upon them. At all events, the body of the act certainly bears all the semblance of an attempted exercise of police power, and of coming within the excepted provisions of the seventh amendment to the constitution. We may assume that there are such carriers as are referred to in the act. We may assume that there are conditions existent which justify legislation for their regulation; and, as was stated in *State v. Pitney*, 79 Wash. 608, 140 Pac. 918, per Main, J.:

"If a state of facts can reasonably be presumed to exist which would justify the legislation, the court must presume that it did exist and that the law was passed for that reason. If no state of circumstances could exist to justify the statute, then it may be declared void because in excess of the legislative power."

That is the correct principle adhered to in this state, and concurred in by almost all the courts, both Federal and state. Whatever may be thought of the expediency of the statute, it cannot be affirmed to be, beyond question, in palpable conflict with the provisions of the seventh amendment to the constitution.

II.    But relator further contends that the declaration that the emergency exists at the date of the enactment on March 10, 1915, followed by a provision that .it shall take effect on April 10, 1915—thirty days thereafter—is a manifest contradiction by the legislature of its own declaration of an immediate emergency.    The true rule is that the law takes effect immediately, although its operation is deferred for a time.    *Hanson v. Hodges*, 109 Ark. 479, 160 S. W. 392.

The intention of the legislature probably was, as is manifestly just sometimes in cases of new legislative activity, to give those affected by the law a reasonable period of time in which to adjust themselves to the changed condition of the law.    Those concerned know the law is immediately in effect, but that they are given until a fixed date to adjust themselves thereto before any of the provisions of the law will be set in operation against them.    The word "immediate" however, as used in subd. "b" of § 1, art. 2 of the seventh amendment to the constitution, "the immediate preservation of the public peace, health or safety," does not necessarily have an arbitrary sense of *instantly, forthwith, or without any intervening lapse of time whatever.*

" 'Immediately' does not, in legal proceedings, necessarily import the exclusion of any interval of time.    It is a word of no very definite signification, and is much in subjection to its

grammatical connections." *Gaddis v. Howell*, 31 N. J. L. 313.

So, in this case, we may consider that there is a certain latitude to be given the significance of the word in its connection and use in the constitution, and it may mean *close to* the time of enacting the law, and that it is within the power and discretion of the legislature to cause it to take effect at a future date with reference to the operation of the act.

We therefore conclude that the demurrer of respondent should be sustained, and the writ denied.

It is so ordered.*

MAIN, ELLIS, PARKER, and CHADWICK, JJ., concur.

MORRIS, C. J., MOUNT, and CROW, JJ. (concurring)—We concur in the result, because the question whether an emergency exists is a legislative question. The legislature having decided the fact, this court is concluded thereby.

---

*N. B.—For dissenting opinion of Judge Fullerton, see *ante* p. 276. —Rep.