[No. 2201]

## IN THE MATTER OF THE APPLICATION OF W. L. COUNTS FOR A WRIT OF HABEAS CORPUS.

[153 Pac. 93]

1. LICENSES—POWERS OF CITY COUNCIL—JITNEY BUSSES.

　　Under Reno City Charter, art. 12, sec. 10, subd. 12, as amended by Stats. 1915, c. 184, giving the city council power to impose a license tax on and regulate hacks, hackney coaches, and "all other vehicles used for hire," the city council had authority to pass an ordinance licensing and regulating the operation of jitney busses.

2. STATUTES—AMENDMENT—AMENDMENT OF REPEALED ACT.

　　An amendment of a city charter was not invalid because the title of the act purported to amend an act theretofore repealed.

3. LICENSES—REASONABLENESS—AMOUNT.

　　A city ordinance licensing jitney busses and regulating the tax according to the seating capacity, was not invalid as failing to comply with the charter provision that all licenses should be graduated according to the amount of business done.

4. MUNICIPAL CORPORATIONS—POWERS—LICENSES—JITNEY BUSSES.

　　Stats. 1913, c. 206, regulating automobiles or motor vehicles on public roads and streets, providing a license for the operation thereof, and in section 15 providing that the act shall in no wise affect any statute now existent nor that may hereafter be enacted providing for the licensing of automobiles for hire, does not interfere with the power of a city to license and regulate the use of jitney busses.

ORIGINAL PROCEEDING by W. L. Counts for writ of *habeas corpus*. **Writ denied.**

*Sweeney & Morehouse*, for Petitioner:

The right to declare an automobile, whether for pleasure or hire, a "jitney bus," is not specifically granted by the state law or the city charter. A city can exercise only such powers as are expressly granted, and such others as may be necessary to carry into execution the powers expressly granted. (*Collins* v. *Hatch*, 18 Ohio, 523, 51 Am. Dec. 465.)

There is no special grant of power to license automobiles, and no such ordinance or license can be made under the general welfare clause of the charter. (*People* v. *Bruce*, 63 Pac. 519.)

The act of 1903 has been absolutely repealed, and therefore the title of said act could not be repealed by the statute of 1915. (36 Cyc. 1085–1165; *Sandoval* v. *Board*, 86 Pac. 427; *State ex rel. Flack* v. *Rogers*, 10 Nev. 319; *State* v. *Lee*, 28 Nev. 380; 26 Am. & Eng. Ency. Law, 703.)

Where there is no special grant of power given to a municipal operation, it cannot, under the general welfare clause, pass an ordinance making that an offense against the city which is an offense against the state. (*State* v. *Welch*, 36 Conn. 215; *Mayor* v. *Hussey*, 21 Ga. 80; *Jenkins* v. *Mayor*, 35 Ga. 145; *Lockwood* v. *Muhlberg*, 124 Ga. 660; *Loeb* v. *City*, 82 Ind. 175; *State* v. *McCoy*, 116 N. C. 1059.) The state law requires a license, and a failure to take out one is a misdemeanor. (Stats. 1913, sec. 16, p. 283.)

*Lester D. Summerfield*, City Attorney of Reno, for Respondent:

A state automobile license does not authorize a licensee to engage in the jitney bus business of carrying passengers for hire. (*Commonwealth* v. *Fenton*, 138 Mass. 195, 29 N. E. 653.)

In any event, a state and a city license are both valid. A license exacted on the same business by a city and a county is valid. (*Ex Parte Siebenhauer*, 14 Nev. 365; 4

Dillon, Mun. Corp., 5th ed. sec. 1408; 2 McQuillin, Mun. Corp., secs. 876, 878, 888; *Brazier* v. *Phila.*, 64 Atl. 508; *Fairfield* v. *Shallenberger*, 113 N. W. 469; *Ex Parte Williams*, 31 Tex. Cr. App. 262; *Cross* v. *N. C.*, 132 U. S. 131, 33 L. Ed. 287.)

Even if the amendments of 1915 are invalid because of defective title, the former charter provisions still remain in full force and effect. (*State* v. *Crozier*, 12 Nev. 300; 36 Cyc. 1056.)

The statute of 1913, relied upon by petitioner, provides for an operating license, and does not cover vehicles for hire. There is no conflict with the city ordinance or charter provisions which could operate as a repeal. (1 Dillon, Mun. Corp., 5th ed. sec. 235; 2 McQuillin, Mun. Corp., sec. 831; *State* v. *Labatut*, 39 La. Ann. 516, 2 South. 550.)

If a jitney bus is a vehicle used for hire, and the classification as such, apart from the general classification of automobiles, is a valid one, the authority for the passage of the ordinance is clear and unquestionable. (*State ex rel. Case* v. *Howell*, 147 Pac. 1159; *Ex Parte Cardinal*, 150 Pac. 348; *Ex Parte Sullivan*, 178 S. W. 537; *Ex Parte Dickey*, 85 S. E. 781.)

By the Court, NORCROSS, C. J.:

This is an original proceeding in *habeas corpus*. Petitioner alleges that he is unlawfully held in custody by the chief of police of the city of Reno upon a charge of misdemeanor for the violation of a certain ordinance in said city, known as City Ordinance No. 183, and entitled:

"An ordinance to fix, impose and provide for the collection of a license tax upon jitney busses, and to regulate the operation and running of the same within the city of Reno; to fix a penalty for the violation of its provisions; and to repeal all ordinances and parts of ordinances in conflict therewith, and particularly City Ordinance No. 176."

Section 1 of the ordinance in question, under the heading "Definition of Terms," provides:

"A 'jitney bus' shall mean and include any self-propelled

motor vehicle, other than a street-car, employed in the business of carrying passengers for hire over fixed routes, or between certain definite points, within the city of Reno."

Section 2 of the ordinance requires a written application, according to a prescribed form, for a license to engage in the business of operating or running a "jitney bus" to be filed with the city clerk.

Section 3 of the ordinance requires that the written application be accompanied with a surety company bond or a policy of insurance executed by a company authorized to do business in Nevada, in the sum of $10,000 for the operation of not to exceed one "jitney bus," and $5,000 for each additional "jitney bus" proposed to be operated, such indemnity bond "conditioned to the effect that in the event of any person or property being injured or damaged by negligence or carelessness in the operation of any jitney bus owned or operated by or under the control of the person filing such indemnity bond, the person so injured in his person or property shall have a right of action thereon. *   *   *  "

Such policy of insurance, if furnished in lieu of a bond, to insure the owner, lessee, or person in control of said "jitney bus against loss by reason of damage that may result to any person or property by reason of negligence or carelessness in the operation of any jitney bus owned, operated, or under the control of the person filing such policy of insurance.  *   *   *   Said policy, or policies, of insurance shall guarantee payment of any final judgment rendered against the said owner or lessee of said jitney bus, under the terms and conditions hereinbefore set forth, irrespective of the financial responsibility of the owner, lessee, or person having the control of said jitney bus."

Section 4 of the ordinance provides that the city council shall grant a license to operate such jitney bus or busses upon the approval of such bond or policy of insurance; the other provisions of the ordinance appearing to have been fully complied with.

Section 5 of the ordinance fixes the amount of a quarterly license tax at $15 for a bus of a capacity of not

exceeding five passengers; $20 for a bus with a capacity of more than five and less than ten passengers; and $30 where the capacity of the bus exceeds ten passengers.

Sections 6, 7, and 9–16 of the ordinance contain other provisions in the nature of regulations, not necessary to here refer to.

Section 8 makes it unlawful to operate a "jitney bus" without the prescribed license, and section 17 makes it a misdemeanor to violate any provision of the ordinance.

Section 19 provides:

"This ordinance is hereby declared to be passed and adopted, both for the purpose of revenue and for the regulation of the business herein legislated upon."

It is the contention of petitioner that the ordinance in question is void, in that the city council of the city of Reno is not invested with any power to adopt such an ordinance; that the city council has no power to classify an automobile as a jitney bus or to define the points in the city of Reno over which an automobile should run, or to authorize or compel or demand of petitioner a bond in the sum of $10,000 or any other sum, before he could run his said automobile, he being licensed by the State of Nevada; that the said ordinance is void because the license tax is not made uniform in proportion to the approximate amount of business done by the licensee, and further, because it is unreasonable and discriminating, in that street railroads, motor cycles, and other vehicles are permitted to use the streets of the city of Reno, without any such qualifications, as the giving of a bond of $10,000, or the paying of a license therefor.

The so-called "jitney bus" is a very modern institution. Many cities have dealt with the question by ordinance similar to that under consideration in the present case. A few cases involving these ordinances have been decided by courts of last resort in several of the states, and such ordinances have uniformly been sustained: *Ex Parte Dickey* (W. Va.) 85 S. E. 781; *Ex Parte Cardinal* (Cal.) 150 Pac. 348; *Ex Parte Sullivan* (Tex. App.) 178 S. W. 537; *State ex rel. Case* v. *Howell* (Wash.) 147 Pac. 1159.

In an article appearing in the August, 1915, number of

Case and Comment, entitled "The Jitney Bus as a Factor in Public Service," the author, Mr. Gordon Lee of the New York bar, says:

"Information obtained from mayors, bankers, and railway authorities in various municipalities discloses that out of 138 cities representing 45 states, the District of Columbia, and 8 of the principal cities of the Dominion of Canada, jitney busses are operated at present in 106, leaving 32 in which there is no traffiic of this character. * * * Municipal regulations of the business usually prescribe a license fee graduated according to passenger capacity, and require a bond to be given to insure careful and proper operation, and to afford indemnity for damages inflicted. * * * "

1. It is not contended by counsel for petitioner that ordinances regulating the use of automobiles for hire are inherently invalid, but it is contended that the city council of the city of Reno is without power to enact such ordinance.

Subdivision 2 of section 10 of article 12 of the city charter of Reno, as amended by Stats. 1915, p. 253, confers general powers upon the city council to make and pass ordinances.

Subdivision 10 of the same section confers power upon the city council "to fix, impose and collect a license tax on and to regulate all character of lawful trades, callings, industries, occupations, professions, and business, conducted in whole or in part within the city, including * * * (specifically enumerating the same), and all character of lawful business or callings not herein specifically named; *provided,* that in fixing licenses the city council must, as nearly as practicable, make the same uniform in proportion to the approximate amount of business done by the licensee; *and, provided further,* that in fixing licenses hereunder, the city council must have due regard for, and be governed as far as possible by, the approximate amount or volume of business done by each person, firm, company, association, or corporation thus licensed."

Subdivision 12 of the same section confers power upon the city council "to fix, impose, and collect a license tax on and regulate hacks, hackney coaches, cabs, omnibuses, express wagons, drays, job wagons, and all other vehicles used for hire."

Subdivision 18 provides for the issuance of all licenses authorized by the charter and to fix the amount thereof, the times for, the manner of, and the terms upon which the same shall be issued.

Subdivision 37 confers power on the city council:

"To adopt and enforce by ordinance, all such measures, and establish all such regulations in case no express provision is in this charter made, as the city council may from time to time deem expedient and necessary for the promotion and protection of health, comfort, safety, life, welfare, and property of the inhabitants of said city, * * * and to pass and enact ordinances on any other subject of municipal control, or to carry into force or effect any other powers of the city, and to do and perform any, every, and all acts and things necessary or required for the execution of the powers conferred or which may be necessary to fully carry out the purpose and intent thereof."

We think the general and specific provisions of the charter referred to *supra*, confer power upon the city council to adopt an ordinance of the character here in question. A jitney bus, as defined in the ordinance, is, we think, clearly within the special provisions of subdivision 12, *supra*, empowering the city council to impose a license tax on and regulate "all other vehicles used for hire."

Counsel for petitioner cites the case of *Transportation Co.* v. *Tobin*, 19 App. D. C. 462, as an authority in support of the contention that the expression "all vehicles used for hire" cannot be construed so as to embrace automobiles or so-called "jitney busses." The court, in the Tobin case, *supra*, held that the words "other vehicles" contained in the license law of the District of Columbia, passed by the legislative assembly of 1871, and providing

for a license tax upon "hacks, cabs, omnibuses, and other vehicles for transportation of passengers for hire" would not be held to include motor vehicles used for hire. While the court in that case held that motor vehicles were not "*ejusdem generis,*" the court expressed its reason for so holding as follows:

"The language of the section of the act in question is very broad and unqualified, and if the electric vehicles, now used by the defendant, had been known and in use at the time of the passage of the act, there would have been good ground for assuming the applicability of the terms of the act to them, and that their use would have been subject to license, although not specifically mentioned in the act. But it is a known fact, and is conceded, that these electric vehicles are of novel and recent invention as to practical use, and that they were unknown to and certainly not within the contemplation of the authors of the act of the legislative assembly, at the time of the passage of that act, as vehicles for the transportation of passengers."

The reasoning of the opinion that a motor vehicle, because not in existence at the time of the passage of the act, ought not to be considered as of the same general character as hacks, cabs, and omnibuses because of a difference simply in the motive power, does not appeal strongly to us. It is a matter of public and general knowledge that these motor vehicles have very largely displaced hacks, cabs, and omnibuses propelled by horses, and that there is little or no distinction between the two classes of vehicles, other than in the motive power used. There is no distinction whatever in the purpose of use. However, it is clear, from the opinion in the Tobin case, that had motor vehicles been in use at the time of the adoption of the license law for the District of Columbia, in question in that case, the words "other vehicles" would have been construed to include such motor vehicles. The Tobin case was decided in 1902. The provisions of the Reno charter under construction in this case were first adopted by the legislature of 1905, and reenacted by the

amendments of 1915. Motor vehicles were in common use at the time of the adoption of these provisions, and applying the reasoning of the Tobin case to the case at bar the words "all other vehicles used for hire" should be construed to include automobiles or "jitney busses" used for the transportation of passengers for hire.

2. The contention that the amendments of the city charter of the city of Reno, made by the legislature of 1915, are invalid, because the title of the act purports to amend an act theretofore repealed, is without merit. This contention is fully answered by the recent case of *Worthington* v. *District Court*, 37 Nev. 212, 142 Pac. 233. See, also, 36 Cyc. 1058.

3. The contention of counsel for petitioner, that the ordinance is invalid because not in compliance with the provisions of the city charter providing that all licenses shall be graduated according to the amount of business done, is also, we think, without merit. The provisions of the ordinance regulating the tax according to the seating capacity of the jitney bus is reasonable. This method of fixing license taxes has been sustained in "jitney bus" cases heretofore cited. See, also, *Ex Parte Li Protti*, 68 Cal. 635, 10 Pac. 113; *Bramman* v. *City of Alameda*, 162 Cal. 648, 124 Pac. 243; 4 Dillon, Municipal Corporations (5th ed.) sec. 1410.

The provisions of the ordinance requiring a bond are substantially the same as those contained in ordinances brought into question in "jitney bus" cases cited *supra*. The reasons given for sustaining the requirement of a bond are manifest and convincing. Speaking to this question, the Supreme Court of California in *Ex Parte Cardinal, supra*, said:

"We see no reason to doubt the power of the state, or any county or municipality, in the exercise of its police power of regulation, to require security in the shape of a bond or insurance policy from its licensees in all cases where the giving of such security may fairly be held to be a reasonable requirement for the protection of the public. * * * In the case at bar we have persons

undertaking to pursue upon the public streets of the city and county of San Francisco an occupation that if negligently conducted is fraught with danger, not only to those who may be passengers, but also to the public generally upon those streets. The occupation is one that may properly be regulated by the public authorities, and the insistence on a bond or other security in a reasonable amount to indemnify those who may be injured by the negligent or illegal operation of the business appears to us not to be beyond the range of reasonable requirement."

The question was considered at great length by the Court of Criminal Appeals of Texas in *Ex Parte Sullivan, supra.* From the opinion we quote the following excerpts:

"On this point, as we see it, it resolves itself into whether or not the judges of this court can say, as a matter of law, that to require of the jitney man to procure such a bond as a prerequisite to his running his business in the streets of Fort Worth is so unreasonable and oppressive as a regulation of the business as to render that provision of the ordinance void. We have no knowledge on the subject other than is disclosed by the facts and record in this case, and the knowledge that we are presumed to possess in common with all other men. On the other hand, the city of Fort Worth and its governing commissioners must have knowledge, and we must presume they have, which we cannot have. * * * We have had much difficulty in reaching a correct and satisfactory conclusion as to whether or not requiring the jitney operators to procure such bond, and not the other classes of common carriers of passengers for hire in the city, is so unreasonable or such a discrimination as to make this feature of the ordinance void. From our study of the facts and the law applicable, we think it reasonably certain that the record shows three separate and distinct classes of common carriers of passengers for hire in said city (outside of the steam and interurban railways not under consideration), to wit: First, the street-car; second, the ordinary hack and automobile; and, third, the jitney. Clearly, the city so regarded them and acted upon such

distinction." "In our opinion the agreed facts in this case show such a marked distinction between the three characters of passenger carriers for hire and the extent and manner of their use of the streets as to justify the city in requiring the operator of the jitney to give such bond and in not requiring either of the other classes of carriers to do so, and that we cannot therefore hold this provision of the ordinance void."

**4.** It is contended that because petitioner has a state license granted in accordance with the provisions of an act of the legislature entitled "An act regulating automobiles or motor vehicles on public roads, highways, parks or parkways, streets and avenues, within the state of Nevada; providing a license for the operation thereof and prescribing penalties for its violation; designating the manner of handling the receipts therefrom and the purpose for which it may be expended and in what manner," approved March 24, 1913 (Stats. 1913, p. 280), that no other license may be required. This latter statute requires all owners of automobiles to procure a license from the secretary of state. The license fee required by this latter act is determined at the rate of 12½ cents per horsepower. The act contains many provisions regulating the use of automobiles or motor vehicles upon the public highways of the state.

Section 14 of the act provides:

"The local authorities of incorporated or unincorporated cities or towns may regulate by ordinance, rule, or regulation hereafter adopted, the speed of motor vehicles within the limits of such cities or towns. *   *   *  "

Section 15 of the act provides:

"This act shall in no wise affect any statute now existent or that may hereafter be enacted providing for a license on automobiles for hire."

It is the contention of counsel for petitioner that the provision of section 14, *supra*, is a limitation upon the power of the authorities of any incorporated city to regulate the use of automobiles or motor vehicles other than in the matter of speed, and that the provisions of

section 15, regulating a "license on automobiles for hire," limits the power to make such regulation by the legislature only.

It is clear from the whole scope and purpose of the act of 1913 that it was not intended to deal with automobiles for hire as distinct from automobiles generally. The legislature will be presumed to know that, when it passed the act of 1913, it could not limit the power of subsequent legislatures to enact a law imposing an additional license on automobiles used for hire. It is presumed, also, that the legislature knew that there was no existing general statute imposing a license on automobiles used for hire. While the word "statute" is generally used to refer to acts passed by a legislature, the word is not always used with such a strict limitation. Applying, however, the strict definition of the word "statute" to the section in question, nevertheless, we think the section will not warrant so narrow a construction as to place any limitations upon the power of the city council of the city of Reno to impose a license upon automobiles used for hire and coming within the definition of a "jitney bus" as defined in the ordinance. The city charter of the city of Reno is a statute, and this statute empowers the city council of the city of Reno to impose a license upon "vehicles used for hire." An automobile is a vehicle, and if it is used for hire, statutory power exists in the city council to impose a license thereon. The construction we have placed on section 15 makes it unnecessary to consider the contention made in reference to section 14.

The act of 1913, regulating automobiles or motor vehicles, is not in conflict with the city charter of the city of Reno, nor with the ordinance in question. The act of 1913 applies to all automobiles whether used for hire or otherwise, and whether operated within or without the limits of an incorporated city. The owner of an automobile who desires to engage in the business of conducting an automobile for hire within the city of Reno must, in addition to complying with the general regulations prescribed by the statute of 1913, also comply with the

ordinance of the city. (*Ex Parte Siebenhauer*, 14 Nev. 365; *Comm.* v. *Fenton*, 139 Mass. 195, 29 N. E. 653; *Brazier* v. *Philadelphia*, 215 Pa. 297, 64 Atl. 508, 7 Ann. Cas. 548; *Ex Parte Dickey*, 85 S. E. 781; Dillon, Municipal Corporations, vol. 4, sec. 1408; McQuillin, Municipal Corporations, vol. 2, sec. 876.)

Our conclusion is that the ordinance is valid, and that petitioner is not unlawfully restrained of his liberty. As said by the Supreme Court of West Virginia in *Ex Parte Dickey, supra:*

"It (the 'jitney bus' ordinance) may be burdensome and, in the opinion of many people, oppressive and unwise, just as many other valid laws are regarded. But the question submitted here is one of municipal power, not policy. With the latter the courts have nothing to do, nor can they overthrow laws, ordinances, or regulations made by competent authority, merely because, in the opinion of the judges, they might or should have been made more liberal or less rigorous."

Counsel for petitioner and the city attorney of the city of Reno agreed that the questions presented in the petition might be determined upon application for the writ.

It is therefore ordered that the petition for the writ be denied.