## MELCONIAN v. CITY OF GRAND RAPIDS.

1. MUNICIPAL CORPORATIONS—HIGHWAYS AND STREETS—RIGHT OF CITY TO CONTROL—RIGHTS OF COMMON CARRIERS.

    The streets of a city belong to the public, and for ordinary use and general transportation and traffic they are free and common to all, and any control sought to be exercised over them by the city must be such as will not defeat or seriously interfere with their enjoyment, but common carriers have no right to such use for private gain without the consent of the city.

2. SAME—REGULATION—DISTINCTION BETWEEN USE OF STREETS BY PUBLIC AND COMMON CARRIERS.

    The distinction between the use of streets by the public in the usual way for pleasure or business and as a place or instrumentality for business for private gain is fundamental, and while, as to the former, the power to regulate must be sparingly exercised and only when necessary in the public interest, as to the latter the right to use may be given or withheld.

3. SAME—CONSTITUTIONAL LAW—REGULATION MUST BE REASONABLE.

    The only restriction on the control which a city may

On validity of excise or license tax upon automobiles, see 37 L. R. A. (N. S.) 440; 52 L. R. A. (N. S.) 949; L. R. A. 1915D, 322.

As to whether person or company operating passenger automobile is a common carrier, see note in L. R. A. 1918F, 468.

On power of municipalities to license and regulate vehicles operating upon streets, see note in 45 L. R. A. (N. S.) 1153.

exercise over its streets under the constitutional provision (Art. 8, § 26) is that it must be reasonable.

4. SAME—LICENSE—REGULATION AFFECTING PRIVATE RIGHTS MAY NOT BE ARBITRARY—EXERCISE OF POLICE POWER DISCRETIONARY.

While the authority to grant a license must be conferred upon some person, body, or commission, when the regulation affects private rights, it is a general rule that the requirements for obtaining a license must be so specifically pointed out in the ordinance as to permit all applicants who comply therewith to secure a license as a matter of right, and that an arbitrary discretion to grant or refuse may not be conferred, but in cases where the public health or safety is involved, this rule has been relaxed and a provision conferring discretionary power has been sustained.

5. SAME—ORDINANCES—VALIDITY—REGULATION OF TAXICABS—CONSTITUTIONAL LAW.

The provisions in section 2 of an ordinance of the city of Grand Rapids regulating the operation of taxicabs in said city, making it unlawful to operate a taxicab on the streets of the city without first obtaining a license to do so, requiring applications on a form provided by the city clerk containing certain information, providing that all applications should be investigated by the city manager who should report same to the city commission with his recommendation, and "if in the opinion of the city commission the person making the application is a proper person, both by experience and character, they may authorize the granting of a license," etc., held, within the power conferred on the city under Article 8, § 28, of the Constitution, and therefore valid.

6. SAME.

Section 4 of said ordinance providing for the granting of permits to drivers of such licensed taxicabs, held, valid.

7. SAME—PROVISIONS OF ORDINANCE—DISCRETION—INFERENCES.

The criticism of counsel that section 2 does not provide that the information secured by the city manager shall be communicated by him to the commission is over-technical, since the reference of the application to him is for the very purpose of securing information on which the commission may act, it being necessary for the exercise of a wise discretion, and it cannot be doubted that

the commission would require him to lay before it the information on which his recommendation is based, and, therefore, it may fairly be said that he is required to do so.

8. SAME — LICENSE FEE — REASONABLENESS — REGULATION—TAXA-TION.

The provision in section 3 fixing the annual license fees at $25 for the first taxicab and $10 for each other is not open to the objection that said fees are so large as to be unjust, unreasonable, and discriminatory, and that they are for the purpose of revenue rather than for the purpose of regulation, since the fees may include cost of issuing license, inspection, expense incident to reasonable supervision, and also any other cost the city may be subjected to by reason of the use of the streets for the purpose permitted.

9. SAME—PROVISION AS TO TRANSPORTING LIQUOR VOID—INTENT.

The intent to limit to the owner or driver of the taxicab the provision in subsection *b* of section 5, making it unlawful for any person "to procure or transport or to aid or abet in the procuring or transporting of any intoxicating liquor," *held*, not so clearly expressed as to permit its enforcement as a penal provision.

10. SAME—PROVISION AS TO WOMEN IN TAXICAB VOID—PRIVATE RIGHTS.

The provision in subsection *c* of section 5, making it unlawful "to allow women in any taxicab while the same is at any stand or upon any street waiting for customers," *held*, so clearly an invasion of private rights as to render it void.

11. SAME—PROVISION FOR INDEMNITY BOND VALID.

The requirement of an indemnity bond of $5,000, under subsection *f* of section 5, *held*, within the power of the city authorities.

12. SAME — PROVISION FOR PUNISHMENT FOR REFUSAL TO PAY FARE VOID—CONSTITUTIONAL LAW—IMPRISONMENT FOR DEBT.

Section 14, providing for the punishment of any person refusing to pay his fare after having received the service, not being limited to cases of fraud or breach of trust within the exception in article 2, § 20, of the Constitution, prohibiting imprisonment for debt, is in conflict therewith, and therefore void.

13. Same — Penalty Not Unreasonable — Imposition of Costs Void—Statutes.

> The maximum penalty provided in section 18 for violations of the ordinance, viz., $500 fine and imprisonment in the county jail not to exceed 90 days, is within the limit permitted by the statute (1 Comp. Laws 1915, § 3307, subd. e), and is not open to the objection that it is unreasonable; but the imposition of costs of prosecution is unauthorized by said statute and is therefore void.

14. Same—Constitutional Law—Constitutional Provisions as to Title of Statute Not Applicable to Ordinances.

> The objection that the title of the ordinance is defective because the provision of a penalty for its violation contained in section 18 is not included therein, is not tenable, the constitutional provisions relating to the title of laws passed by the legislature having no application to ordinances enacted by the common council of a city.

15. Same — Invalidity of Separable Parts of Ordinance Does Not Render Whole Invalid.

> The sections or parts of sections of the ordinance which are herein held invalid, being distinctly separable, the remainder, which constitute in themselves a complete enactment, are valid and enforceable.

Appeal from superior court of Grand Rapids; Dunham (Major L.), J.   Submitted January 30, 1922. (Docket No. 124.)   Decided June 5, 1922.

Bill by Harry Melconian and others against the city of Grand Rapids to enjoin the enforcement of an ordinance.   From a decree for plaintiffs, defendant appeals.   Reversed, and bill dismissed.

*Shelby B. Schurtz,* for plaintiffs.
*Ganson Taggart,* for defendant.

Sharpe, J.   On August 22, 1921, the city of Grand Rapids adopted an ordinance "Providing for and Regulating the Operation of Taxicabs" in that city.   The plaintiffs, who "are persons operating motor vehicles

for hire," seek to restrain its enforcement by injunction.   In section 1, the word "taxicab" is defined to "mean and include any motor vehicle engaged in the business of carrying persons for hire."   Section 2 makes it unlawful to operate a taxicab on the streets of the city without first obtaining a license to do so. An application for a license on a form provided must be filed with the city clerk.   Certain information regarding the applicant and the type of car must be set forth therein.   It is provided that the city clerk shall refer all applications to the city manager—

"who shall cause an investigation to be made of the fitness of the applicant as to character and ability, and shall transmit the application with his recommendation to the city commission.   If in the opinion of the city commission the person making the application is a proper person, both by experience and character, they may authorize the granting of a license," etc.

Section 4 contains somewhat similar provisions regarding the granting of permits to drivers of such vehicles.   These sections are claimed to be invalid because they attempt "to confer upon the city commission, the arbitrary power to grant or refuse a license according to its whim or caprice."   The trial court sustained this claim and his decree declaring the ordinance void was largely based thereon.

The apparent confusion in the authorities is, in part at least, due to a lack of consideration of the subject-matter sought to be controlled and the source of such control.   There are many occupations and kinds of business which, under the police power and the authority delegated by the legislature, may be regulated by the city authorities.   Such regulation is permitted in the interest of the public peace, health, morals and general welfare of the city.   While an individual has an inherent or natural right to engage in any lawful business on his own property, yet the nature of

218 Mich.—26.

the business sought to be carried on may be such as to render it subject to regulatory control. Ordinances regulating slaughter houses, pawnbrokers, junk dealers, livery stables, pool rooms, places where articles of food liable to infection are kept for sale, and the like, have been sustained as a valid exercise of such power. Nuisances may also be abated. As to some of these, the power must be cautiously and sparingly exercised. As to others, there exists a greater control. As to still others, the business may be suppressed or prohibited, wholly or conditionally, as the particular facts may justify. Further discussion of this power seems unnecessary as the rules of law governing it seem well established. It is sufficient to say that the regulation must be reasonable, without discrimination, and fair to all alike.

The subject-matter of the ordinance here considered is the use of the public streets. Section 28 of article 8 of our State Constitution reads as follows:

"No person, partnership, association or corporation operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any city, village or township for wires, poles, pipes, tracks or conduits, without the consent of the duly constituted authorities of such city, village or township; nor to transact a local business therein without first obtaining a franchise therefor from such city, village or township. The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships."

The power conferred upon a city by this section was considered by this court in *People* v. *McGraw*, 184 Mich. 233, and in *Brennan* v. *Recorder of Detroit*, 207 Mich. 35. In the former case it was said:

"By giving the language of the whole section its ordinary and natural meaning, public utilities were placed under control of the local authorities, and the local authorities may control within reason the use of

their streets for any purposes whatsoever not inconsistent with the State law."

It was also held that any attempt on the part of the State legislature to take away from cities such reasonable control was unconstitutional and void.

Taxicabs as defined in the ordinance are common carriers. Mr. Thompson, in his work on Carriers of Passengers, page 26, note 1, says:

"A common carrier of passengers is one who undertakes for hire to carry all persons indifferently who may apply for passage. To constitute one a common carrier it is necessary that he should hold himself out as such. This may be done not only by advertising, but by actually engaging in the business and pursuing the occupation as an employment."

A public moving van was held to be a common carrier in *Lawson* v. *Judge of Recorder's Court,* 175 Mich. 375 (45 L. R. A. [N. S.] 1152), and in *Terminal Taxicab Co.* v. *Kutz,* 241 U. S. 252 (36 Sup. Ct. 583; Ann. Cas. 1916D, 765). One who holds himself out as a cartman, drayman or truckman, ready to carry goods for hire for all who may wish to employ him, was held to be a common carrier in *Lloyd* v. *Haugh,* 223 Pa. 148 (72 Atl. 516, 21 L. R. A. [N. S.] 188).

"A taxicab company following the business of transporting persons for hire and holding itself out to carry one and all is a common carrier of passengers, and is subject to all the liabilities of such a carrier." Syllabus, *Van Hoeffen* v. *Columbia Taxicab Co.,* 179 Mo. App. 591 (162 S. W. 694).

The authorities are collected and discussed at length in *Cushing* v. *White,* 101 Wash. 172 (172 Pac. 229, L. R. A. 1918F, 463), and note to the latter.

The streets of the city belong to the public. For ordinary use and general transportation and traffic, they are free and common to all, and any control sought to be exercised over them must be such as will

not defeat or seriously interfere with their enjoyment. The plaintiffs, however, as common carriers have no right to such use for private gain without the consent of the city. Their use is accorded as a mere privilege, and not as a matter of inherent or natural right. *City of Memphis* v. *State*, 133 Tenn. 83 (179 S. W. 631, L. R. A. 1916B, 1151, P. U. R. 1916A, 825, Ann. Cas. 1917C, 1056) ; *Desser* v. *City of Wichita*, 96 Kan. 820 (153 Pac. 1194, L. R. A. 1916D, 246) ; *Greene* v. *City of San Antonio* (Tex. Civ. App.), 178 S. W. 6; *Hadfield* v. *Lundin*, 98 Wash. 657 (168 Pac. 516, L. R. A. 1918B, 909, Ann. Cas. 1918C, 942) ; *Ex parte Dickey*, 76 W. Va. 576 (P. U. R. 1915E, 93, 85 S. E. 781, L. R. A. 1916F, 840) ; *In re Hoffert*, 34 S. D. 271 (148 N. W. 20, 52 L. R. A. [N. S.] 949) ; *Huston* v. *City of Des Moines*, 176 Iowa, 455 (156 N. W. 883).

The distinction between the use by the public in the usual way for pleasure or business and as a place or instrumentality for business for private gain is fundamental. While as to the former the power to regulate must be sparingly exercised and only when necessary in the public interest, as to the latter the right to use may be given or withheld. This distinction is made clearly apparent when the decision in *Matter of Frazee*, 63 Mich. 396 (6 Am. St. Rep. 310), on which plaintiffs strongly rely, is read in connection with *Love* v. *Judge of Recorder's Court*, 128 Mich. 545 (55 L. R. A. 618). In the *Frazee Case*, the right to the use of the streets for the purpose of a parade was in question. This was said to be a natural or inherent right, subject only to reasonable regulation, and it was held that the by-law which left "the power of permitting or restraining processions, and their courses, to an unregulated official discretion" was invalid. The *Love Case* involved an ordinance prohibiting the use of the streets or public places for the

purposes of public addresses "except in accordance with a permit from the mayor, such permit to designate the time and place" when an address might be made.   The *Frazee Case* was relied on as controlling. The ordinance was held to be valid and the distinction here sought to be made between permissive use and use as a matter of right was pointed out.

The only restriction on the control which the city may exercise over its streets under the constitutional provision is that it must be reasonable.   The authority to grant a license must be conferred upon some person, body or commission.   When the regulation affects private rights, it is held as a general rule that the requirements for obtaining a license must be so specifically pointed out in the ordinance as to permit all applicants who comply therewith to secure a license as a matter of right and that an arbitrary discretion to grant or refuse may not be conferred.   In cases where the public health or safety is involved, this rule has been relaxed and a provision conferring discretionary power has been sustained.   *Lieberman* v. *Van De Carr*, 199 U. S. 552 (26 Sup. Ct. 144), and *Fischer* v. *City of St. Louis*, 194 U. S. 361 (24 Sup. Ct. 673).   In the former, an ordinance providing that—

"No milk shall be received, held, kept, either for sale or delivered in the city of New York, without a permit in writing from the board of health,"

was attacked because it conferred "absolute and despotic power to grant or withhold permits to milk dealers."   It was held that these were questions which arise in the administration of the law but do not affect its validity and that an arbitrary exercise of the discretionary power conferred was subject to review by courts in a proper proceeding.   In the *Fischer Case,* the ordinance regulated the keeping of cow stables and dairies within the city limits.   The court said:

"It would be exceedingly difficult to make exceptions in the ordinance itself without doing injustice in individual cases, and we see no difficulty in vesting in some body of men, presumed to be acquainted with the business and its conditions, the power to grant permits in special cases."

In *City of Grand Rapids* v. *Braudy,* 105 Mich. 670 (32 L. R. A. 116, 55 Am. St. Rep. 472), an ordinance regulating junk dealers which conferred discretionary power on the common council to grant or refuse a license was held valid. It was said:

"Courts cannot interfere with legislative discretion, and are slow to declare ordinances invalid because unreasonable, when the power to legislate upon the subject has been conferred upon the common council. The council's discretion, and not the court's, must control. In such matters the city authorities are usually better judges than the courts."

Where, however, the subject-matter sought to be controlled is one to which an applicant has a permissive right only, many courts have gone far in holding that the validity of the provisions under which such right may be attained cannot be questioned. *Davis* v. *Massachusetts,* 167 U. S. 43 (17 Sup. Ct. 731) ; *Hadfield* v. *Lundin, supra; State* v. *Mayo,* 106 Me. 62 (75 Atl. 295, 26 L. R. A. [N. S.] 502, 20 Ann. Cas. 512). (See quotation from the *Davis Case* in *Love* v. *Judge of Recorder's Court, supra.*)

The provisions in sections 2 and 4 are, we think, well within the power conferred on the city under the constitutional provision. The criticism of counsel that section 2 does not provide that the information secured by the city manager shall be communicated by him to the commission is over-technical. The manager is the servant of the commission. The reference of the application to him is for the very purpose of securing information on which the commission may act. It cannot be doubted that the commission could require

him to lay before it the information on which his recommendation is based and we think it may fairly be said that the provision requires him to do so. The nature of the business licensed is such that its reasonable control necessitates the exercise of a wise discretion in deciding who shall be permitted to engage in it. The dangers incident to the use of the streets by automobiles for pleasure or business, if driven carelessly, have been many times pointed out by this court. *Colborne* v. *Railway,* 177 Mich. 139, 149; *Patterson* v. *Wagner,* 204 Mich. 593, 600. Such dangers and the inconvenience to traffic from taxicabs are even greater than from electric cars, which are confined to well-defined courses and move on metal rails. Provisions in the State law and municipal ordinances containing safety regulations have been upheld. *People* v. *Dow,* 155 Mich. 115; *People* v. *McGraw, supra*; *Daugherty* v. *Thomas,* 174 Mich. 371 (45 L. R. A. [N. S.] 699, Ann. Cas. 1915A, 1163). These regulations, applying as they do to persons using the streets as a matter of right, are general in their nature and apply to all alike.

Here, however, the plaintiffs seek to use the streets as a place in which to carry on a private business for personal gain. Their right to do so may be granted upon considerations outlined in the form of the questions to be answered in the application blank and may be made dependent upon their answers thereto and the information secured as to their character, fitness or other determining facts. Should the number of applications exceed the reasonable demands of the city for such service, the power to limit must be vested somewhere. Such demands may so vary from time to time, dependent upon the growth of the city, the use or non-use of the streets by street car lines and other considerations, that it would be impractical to express such limitations in an ordinance. The de-

termination of such questions must be left to some agency of the city. And, as was said by Mr. Justice MOORE in the *Love Case* (applying the language to the commission) :

"Under such circumstances, what can be more reasonable than to lodge the power of deciding when and where one may occupy this public space in one having sufficient intelligence and so possessing the confidence of his fellow citizens that they have placed him at the head of the municipal government?"

In *Huston* v. *City of Des Moines, supra,* the ordinance in question contained a provision quite similar to that in section 2. It provided for the form of the application and that when presented to the city clerk he should refer it to the superintendent of public safety, "who, at the next regular meeting of the council * * * shall present the same to the council with his recommendation thereon," and that the council might grant the application as presented, or grant it with modifications, or deny it. The discretion imposed was held to be within the power conferred. In *Ex parte Dickey, supra,* the validity of an ordinance regulating "jitney busses" was in question. The court very carefully distinguishes between vocations which do not involve the use of public property and those requiring the use of the public streets. It is said:

"But when a citizen claims a private right in public property, such as a street or park, a different situation is presented. * * * Such rights are in the nature of concessions by the public, wherefore the legislature may give or withhold them at its pleasure. It may give them for some purposes and withhold them for others and, in the case of those given, it may upon considerations of character, quality and circumstances, discriminate, permitting some things of a general class or nature to be done and refusing to permit others of the same general class to be done, or extending the privilege to some persons and denying it to others because of differences of character or capacity."

The cases relied on by the trial court (*Devereaux v. Genesee Township Board*, 211 Mich. 38; *City of Portland* v. *Traynor*, 94 Or. 418 [183 Pac. 933, 6 A. L. R. 1410]; *Makris* v. *Superior Court*, 113 Wash. 296 [193 Pac. 845, 12 A. L. R. 1428]; *State* v. *Mahner*, 43 La. Ann. 496 [9 South. 480]; *County of Los Angeles* v. *Hollywood Cemetery Ass'n*, 124 Cal. 344 [57 Pac. 153, 71 Am. St. Rep. 75]; *Yick Wo* v. *Hopkins*, 118 U. S. 356 [6 Sup. Ct. 1064]; *City of Seattle* v. *Gibson*, 96 Wash. 425 [165 Pac. 109]; *Garrabad* v. *Dering*, 84 Wis. 585 [54 N. W. 1104, 19 L. R. A. 858, 36 Am. St. Rep. 948]), are not, in our opinion, controlling. The ordinances there considered were all regulatory of the classes of business which may be engaged in as a matter of right, to which, as already stated, a different rule applies. The *Devereaux Case* involved an ordinance providing for the issuing of permits "to public billiard and pool rooms, dance halls, bowling alleys and soft drink emporiums;" in the *Traynor Case* the subject of attempted regulation was "a food establishment or soft drink establishment;" the *Makris Case* involved the regulation of the sale of candy and soft drinks; in the *Mahner Case* it was sought to regulate certain dairies within the limits of the city; the *Hollywood Case* involved the right to establish cemeteries without the consent of the boards of supervisors; the *Yick Wo Case*, the regulation of laundries; the *Garrabad Case* was similar to *Matter of Frazee, supra;* and the *Seattle Case* reviewed an ordinance for the licensing of druggists.

Two other cases specially relied on by plaintiffs are *Smith* v. *Hosford*, 106 Kan. 363 (187 Pac. 685), and *Cicero Lumber Co.* v. *Town of Cicero*, 176 Ill. 9 (51 N. E. 758, 42 L. R. A. 696, 68 Am. St. Rep. 155). The *Smith Case* involved the grant of a permit to

build a garage, the *Cicero Case* a prohibition to use certain streets by certain classes of vehicles.

In the annotation following *Makris* v. *Superior Court*, 12 A. L. R. 1435, the writer says:

"The validity of the grant of discretion depends largely upon the nature of the business or thing with respect to which it is to be exercised, and as to whether or not the proper regulation and control thereof require that a discretion be vested in one or more public officials in order properly to control the conduct of the business, or the use, etc., of the article or thing in question.

"It should also be remembered that the fact that a court has laid down one rule in one case, as, for instance, than a municipal ordinance granting arbitrary and uncontrolled discretion to city officials as to the granting of licenses or permits to carry on what is generally regarded as a useful and ordinarily lawful business is invalid does not necessarily preclude the reaching of a contrary conclusion as to the validity of a grant of arbitrary power with respect to the licensing of a business such as dealing in intoxicating liquors, the right to carry on which is generally regarded as a mere privilege, subject to arbitrary control or absolute prohibition."

Section 3 provides for an annual license fee of $25 for the first taxicab and $10 for each other. These are said to be "unjust, unreasonable and discriminatory;" that they "are not for the purpose of regulation, but are for the purpose of revenue." Such fees may include the cost of issuing the license, the cost of inspection and any expense incident to a reasonable supervision of the use of the streets by taxicabs. In fixing them, consideration may also be given to any consequences likely to subject the city to cost by reason of their use for the purpose permitted. We agree with the trial court that the fees fixed are not so large as to be subject to the objections stated. *Vernor* v. *Secretary of State*, 179 Mich. 157 (Ann. Cas. 1915D,

128) ; *City of Grand Rapids* v. *Braudy, supra; People* v. *Grant,* 157 Mich. 24, and cases cited; *Huston* v. *City of Des Moines, supra.*

Subsection (*b*) of section 5 makes it unlawful for any person "To procure or transport or to aid or abet in the procuring or transporting of any intoxicating liquor." It was doubtless the intention to limit this provision to the owner or driver of the taxicab, but such intent is not so clearly expressed as to permit its enforcement as a penal provision.

Subsection (*c*) of this section makes it unlawful:

"To allow any taxicab to be used for immoral purposes, or to procure or aid in procuring any woman or women for immoral purposes, or to allow women in any taxicab while the same is at any stand or upon any street waiting for customers."

The latter part of this subsection is so clearly an invasion of private rights that it cannot stand.

Subsection (*f*) of this section provides for the furnishing of an indemnity bond in the sum of $5,000. Such requirement is clearly within the power of the city authorities. *City of Grand Rapids* v. *Braudy, supra.*

Section 14 provides for the punishment of any person refusing to pay his fare after having received the service. This is clearly in violation of section 20, article 2, of the Constitution, which reads, in part, as follows:

"No person shall be imprisoned for debt arising out of, or founded on contract, express or implied, *except in cases of fraud or breach of trust.*" * * *

The provision does not attempt to limit the punishment to the exception which we have italicized. This the legislature very carefully did in the act for the protection of hotel keepers (2 Comp. Laws 1915, § 6966). This section may not be enforced.

Section 18 provides that violations of the ordinance shall be deemed misdemeanors and may be punished by "a fine not to exceed $500 and costs of prosecution or imprisonment in the common jail of Kent county for a period of not more than ninety days, or both," in the discretion of the court. The maximum fine and punishment provided for is said to be unreasonable. We do not think so. It is within the limit permitted by the statute. 1 Comp. Laws 1915, § 3307, subd. e. There is no presumption that an unreasonable penalty will be imposed for a violation of any of the provisions of the ordinance. Individual cases may be disposed of as they arise. It is said that the provision as to costs is unauthorized under the statute. While the power herein exercised by the city flows from the Constitution, and not from the statute, we feel constrained to agree with counsel for plaintiffs that costs may not be imposed. The statute does not permit it and the Constitution merely provides for reasonable control. We think the statute determinative of the penalty which may be imposed under the ordinance.

The title is attacked because the provision for a penalty contained in section 18 is not included in it. In *People* v. *Wagner*, 86 Mich. 594, 597 (13 L. R. A. 286, 24 Am. St. Rep. 141), it was held—

"that the constitutional provisions relating to the title of laws passed by the legislature do not apply to ordinances enacted by a common council of a city."

We think the title sufficient. See 28 Cyc. p. 378.

Except as herein pointed out, we think the provisions of the ordinance are valid and enforceable. The sections or parts of sections which are invalid are distinctly separable from the remainder. Those held valid constitute in themselves a complete enactment, and may be enforced. *City of Detroit* v. *Railway Co.*, 95 Mich. 456 (20 L. R. A. 79, 35 Am. St. Rep.

580) ; *People* v. *Armstrong,* 73 Mich. 288 (2 L. R. A. 721, 16 Am. St. Rep. 578) ; 28 Cyc. p. 372.

The following cases in which ordinances containing somewhat similar provisions were considered will be found instructive: *Ex parte Counts,* 39 Nev. 61 (153 Pac. 93) ; *Hazelton* v. *City of Atlanta,* 147 Ga. 207 (93 S. E. 202) ; *Hadfield* v. *Lundin, supra; Commonwealth* v. *Slocum,* 230 Mass. 180 (119 N. E. 687) ; *City of Memphis* v. *State, supra; Ex parte Cardinal,* 170 Cal. 519 (150 Pac. 348, L. R. A. 1915F, 850) ; *State* v. *Howell,* 85 Wash. 294 (147 Pac. 1159, Ann. Cas. 1916A, 1231) ; *Greene* v. *City of San Antonio, supra; Ex parte Dickey, supra; Auto Transit Co.* v. *City of Fort Worth* (Tex. Civ. App.), 182 S. W. 685; *Wilson* v. *Eureka City,* 173 U. S. 32 (19 Sup. Ct. 317) ; *Mehlos* v. *City of Milwaukee,* 156 Wis. 591 (146 N. W. 882, 51 L. R. A. [N. S.] 1009, Ann. Cas. 1915C, 1102).

The decree rendered is reversed and set aside and the bill of complaint dismissed, but without costs.

FELLOWS, C. J., and CLARK, BIRD, MOORE, and STEERE, JJ., concurred.    WIEST, J., concurred in the result.

The late Justice STONE took no part in this decision.